SARAH MILLS and others *vs.* E. W. REBSTOCK and others.

August 18, 1882.

Life Insurance—Mutual Benefit Society—Suicide.—The constitution and by-laws of a "mutual benefit association" organized to secure the benefit of life insurance to the heirs of deceased members on the death assessment plan, and which issues no policies, stand in the place of a policy; and where such constitution and laws contain no provision qualifying the right of recovery in case of suicide, the heirs of a member are entitled to recover the amount stipulated, irrespective of the mode of his death.

Same—Member in Good Standing.—Evidence in this case considered, and *held* sufficient to sustain the finding of the trial court that a deceased member was "in good standing" in the order at his death.

Appeal by defendants from an order of the district court for Hennepin county, *Young*, J., presiding, refusing a new trial.

*Benton, Benton & Roberts*, for appellants.

*F. B. Dodge*, for respondents.

VANDERBURGH, J.*   The United Ancient Order of Druids is a mutual-benefit association in this state, including several subordinate organizations or groves, under the jurisdiction of a grand grove, in which the groves are represented, and which are subject to a constitution and laws regulating their government, and defining the rights and duties of the members.   Connected with the organization is a department for life insurance, styled "The Widows' and Orphans' Fund," for the sole benefit of the heirs of deceased members of the order. It is required, in article 10 of the constitution, that every person who shall become a member of the order shall join "The Widows' and Orphans' Fund."   It is also provided that "on the death of a member in *good standing*, the widow, children, or heirs (as defined in section 6) are to be paid the sum of $1,000 within 60 days after due notice is given to the grand secretary."   This insurance fund is derived, it appears, from death assessments and dues paid by the members. Certain officers of the grand grove and subordinate groves constitute

*Mitchell, J., not being present at the argument, took no part in this case.

a board of directors for the management of this "fund." By article 5 of the constitution it is provided that every member shall make regular payments to the grove fund, and "shall pay his quarterly dues *on or before the first meeting in each quarter in advance,*  *  *  * and until such dues are paid,  *  *  * he shall not be *in good standing,*" etc.

This action is brought by the heirs of Charles H. Richmond, deceased, who was at his death a member of the order, against the defendants, as directors of this fund, to recover the sum of $1,000, claimed to be due them in accordance with the provisions of the constitution above mentioned. Richmond died by his own hand about August 12, 1880. At the trial the plaintiffs proved that, prior to his death, he had paid all assessments due to the "Widows' and Orphans' Fund," but they offered no evidence to show that his quarterly dues to the grove fund had also been paid, so as to establish his "good standing" in the order, as required by article 5, above referred to. For the want of such proof the defendants moved to dismiss the action, which motion was overruled by the court.

The contention of the plaintiffs is that it was only necessary to be shown that the deceased was a member of the order, and not suspended, (which did appear,) and that he was in good standing in the "Widows' and Orphans' Fund," through the payment of the assessments specially made for that "fund" upon the death of members. The plaintiffs, however, also insist that if it were necessary to be shown that he was also in good standing in the order, as required by article 5, this proof was afterwards so far supplied by the evidence introduced by the defendants, as, *prima facie* at least, to raise the presumption of such good standing of the deceased.

The defénce is rested upon the ground (1) that he was in default in the payment of the dues to his grove for the quarter commencing August 1st, prior to his decease, and that it was essential to his "good standing" that such payments should have been made when due; and (2) that his death was caused by his own act of suicide.

In reference to the first point, which is the principal one in the case, we think the construction of the constitution and laws is not free from doubt. They appear to be inartificially drawn, and the

evidence in the case is too meager to give a clear understanding of their practical application. We are of the opinion, however, that to entitle his heirs to the benefit of the fund, the member must, at his death, have kept up his good standing in the order by the payment of his dues to the grove fund, as well as of the assessments made for the "Widows' and Orphans' Fund." Conceding that the burden of proof rested upon the plaintiffs to establish *prima facie* his "good standing" at his death, we think, taking the evidence as it was left by the defendants, a presumption of his good standing was raised, and that it remained for the defendants to show further that a meeting of his grove had been held in August, 1880, prior to his death; for, by the terms of the section of article 5, above quoted, it appears that a member is not in default, so as to lose his standing, until the "first meeting" in the quarter. The financial secretary of the grove to which Richmond belonged, testified, on defendants' behalf, in answer to the question, "What was his financial standing with the grove at the time of his death?"—"He was one quarter in arrears for dues to the grove. They are payable in advance, and became due August 1, 1880, $1.25. * * * The $1.25 became due August 1, 1880, in advance." This is all the testimony as to arrears. The time of the first meeting in the quarter does not appear to be fixed in the constitution or laws. The language of the section already quoted is: "Every member shall pay his quarterly dues on or before the first meeting in each quarter." As will be seen by reference to the record, there was no evidence offered of any meeting held during that month of August. Rightly considered, then, we think the evidence of this witness merely shows that Richmond had not paid the dues for the quarter beginning August 1, 1880. That day fell on Sunday, and it is not to be presumed that the grove held a meeting. He was not, therefore, in default on that day, and, as by the constitution he had a right to pay his dues *on* the day of the meeting, it is not to be inferred that he was in default for not paying them *before* the first meeting in the quarter, the date of which does not appear. He had paid all other charges, and there was nothing to show that this item had become due. The only evidence on the subject of the time of the meetings is that of the same witness, who testified: "The grove

holds regular meetings each week." That regular weekly meetings were held at the time of the trial, in 1881, is not sufficient to prove the fact of a particular meeting in August, 1880. Whether such a meeting had been held was a matter particularly within the knowledge of the defendants, and especially of this witness, the financial secretary, who kept a record of the standing of the deceased, and his attention was particularly fixed on the subject. Now, as the deceased was shown to be in good standing until the first meeting in the quarter should occur, if the defendants desired to insist upon a forfeiture upon technical grounds, as against these heirs, they should have proceeded further to show affirmatively that a meeting was in fact held.

2. In these mutual associations, which proceed upon the plan of assessments to meet their liabilities, and issue no policies, the constitution and laws stand in the place of a policy, and constitute the contract, which determines the mutual rights and obligations of the parties. *Greeno* v. *Greeno*, 23 Hun, 478. In the case of a policy of life insurance, issued for the benefit of the heirs of the person insured, it is well settled that the fact of his death by suicide, unless otherwise expressly stipulated, is no defence. *Fitch* v. *Am. Popular Life Ins. Co.*, 59 N. Y. 557. So, in this case, where the constitution and laws of the association contain no provision qualifying the right of recovery in case of suicide, the heirs of a member are entitled to recover the amount stipulated, irrespective of the mode of his death.

Order affirmed.