SARAH E. KERR *vs.* MINNESOTA MUTUAL BENEFIT ASSOCIATION.

August 31, 1888.

**Life Insurance — Condition—Suicide to Avoid Arrest for Crime.—A**
policy of insurance provided "if the assured shall die in, or in consequence
of, the violation of any criminal law of any country, state, or territory in
which the assured may be, this certificate shall be null and void." *Held*,
that suicide committed by an alleged fugitive from justice, to avoid arrest
and trial for a crime committed by the assured, is not to be considered
as the proximate result of the alleged crime, and that his death by suicide
is not, within the proper meaning of the policy, to be considered as the
violation of law therein referred to.

**Same—Suicide—Policy for Benefit of Third Person.—**Suicide is no de-
fence to an action on a policy issued for the benefit of a third person,
where there is no stipulation to that effect in the policy.

**Same—Mutual Benefit Insurance—Amount of Recovery.—**Under the
contract of insurance set forth in the opinion, *held*, that the defendant
association was liable absolutely to pay the plaintiff, who is the benefici-
ary of the assured, a sum equal to $1.50 for each certificate of insurance
in force when the insurance money became due, according to the terms
of the policy or certificate of insurance therein, and a ratable proportion
with other policies out of any moneys in the assessment fund applicable
to such claims.

This action was brought in the district court for Washington county,
and tried by *Crosby*, J., (a jury being waived,) who ordered judgment
of $4,000 for plaintiff. A new trial was refused, and the defendant
appealed.

*Geo. F. Getty*, for appellant.

*Fayette Marsh*, for respondent.

VANDERBURGH, J. The plaintiff is the widow of Robert W. Kerr,
who, on the 20th day of April, 1884, became a member of the defend-
ant association, and held a certificate or policy of insurance issued
by it at the time of his death, which, defendant claims, was by sui-
cide, July 27, 1885, in the dominion of Canada. The plaintiff is
named as the beneficiary in this policy.

1. The policy provides that "if the assured shall die in, or in consequence of, the violation of any criminal law of any country, state, or territory in which the assured may be, this certificate shall be null and void." The defendant offered to prove on the trial that Kerr, in order to escape arrest for the crime of forgery in this state, fled to Canada, where he was discovered and apprehended by detectives, and thereupon, to avoid being brought back to Minnesota for trial, shot and killed himself; that the Criminal Code of Canada forbade self-murder; and that his suicide was a violation thereof. We think this evidence was properly rejected. His death in Canada cannot be treated as the proximate result of his crime in Minnesota. *Cluff* v. *Mutual Benefit Life Ins. Co.*, 13 Allen, 308, 319. And the fact of his suicide is not in itself to be construed as occurring in or growing out of a violation of law, within the meaning of the policy. In the law of insurance, suicide is not, as a rule, recognized as a ground of exemption from liability, or for forfeiture of a policy issued for the benefit of a third person, unless it is expressly so provided in the policy. *Mills* v. *Rebstock,* 29 Minn. 380, (13 N. W. Rep. 162.) And under the general language here used, which must be construed favorably to the assured and strictly as against the company, the violation of law referred to in the policy ought not, we think, to be construed to mean or include suicide. Suicide, though strictly a crime, is not reckoned among offences or violations of law, such as the language of the policy would be commonly understood to refer to. Otherwise construed, the policy would be misleading in its practical operation. *Patrick* v. *Excelsior Life Ins. Co.*, 67 Barb. 202.

2. The court also rejected an offer by defendant to prove that the last assessment made by the company before the death of the assured was made on the 1st day of July, 1885, and that notice was duly given to him not later than the 10th day of July, calling for the payment thereof (the amount being $10) not later than the 10th day of August, 1885, at the office of the company in Minneapolis, and that unless the same was paid by said Robert W. Kerr, the beneficiary, or some one for them, on or before the 10th day of August, said policy would be lapsed and void; that on the 10th day of August no part of the same was paid, and the policy was accordingly declared

void by the company, before they had any knowledge or notice of his death. The terms of the policy upon this subject are: "The holder of this certificate further agrees that if he shall fail to pay to this association any quarterly assessment within forty, and any special assessment within thirty, days from the date of the notice thereof, then, and in every such case, this certificate shall be null and void." But since Kerr died on the 27th day of July, and he had until the 10th day of August in which to pay the assessment, he was not in default, and the policy was still in force at the time of his death, and the liability of the company was accordingly fixed. The exception to the ruling of the court in this matter cannot, therefore, be sustained. Whether the assessment ought not to be deducted from the amount due plaintiff the defendant does not ask us to decide.

3. It is alleged and found that the plaintiff gave notice and made and filed due proof with the defendant of the death of the assured more than 90 days before the commencement of this action, and we do not see that the answer puts this allegation in issue. We must assume that the condition of the policy in this respect was complied with.

4. The principal question in the case is as to the amount which plaintiff is entitled to recover. By their contract the association undertake to pay "an amount equal to $1.50 for each certificate in force at the time such amount shall become due, but not to exceed $4,000, to himself, if living at the expiration of 22 years from the date hereof, and if not, to his wife, within 90 days after the receipt by the association of due notice and proof of the death of the said Robert W. Kerr; and this association promises to pay the full amount of this certificate at its maturity: *provided*, there shall be sufficient moneys in the fund from which this certificate shall become payable: *and provided further*, that said moneys shall be distributed proportionately in payment of this and any other certificate becoming due and payable the same quarter; such payment in no case to exceed the amount named in this certificate." The charter of the association provides the method of raising money by assessments, and it also provides that the period of 22 years named in the certificate shall be known as the "endowment period," and the sum designated as payable to a

member at the end of this period ($4,000) is styled an "endowment." Regular quarterly assessments of five dollars each are to be levied upon the members, and special assessments may be made by order of a majority of the directors. The association is also required to accumulate and maintain two funds, to be known, respectively, as the "Assessment Fund" and "Endowment Fund." All endowments are to be paid out of the latter fund, which is made up of 15 per cent. of all assessments actually paid in, except all first assessments. The balance of the assessments, less expenses, constitutes the "assessment fund," out of which beneficiaries are paid in cases where members die within the endowment period. It is clear, therefore, from the terms of the policy, that the plaintiff's claim is not to be paid from the endowment fund, but from the assessment fund.

There is some dispute over the terms of the policy in relation to the extent of the defendant's liability to beneficiaries; but it is obvious, we think, that the obligation is to pay not less than $1.50 for each certificate in force, nor more than $4,000, to be paid from the assessment fund. In respect to the amount to be raised for the beneficiary, the parties, therefore, have stipulated that it shall be at least $1.50 for each certificate. An action for the full amount of $4,000, which would in any case be the limit of liability, could only be maintained upon its being shown that there was that amount in the assessment fund subject to be applied to the claim ratably with others in the same quarter; which fact is not alleged or found. But in respect to the first-named sum, that is clearly obligatory upon the association, and they are, by their charter, authorized to make assessments, regular and special, upon the members, payable within 40 and 30 days, respectively. The defendant has refused to pay or recognize or make any provision for the claim of the plaintiff as such beneficiary. The measure of plaintiff's damages is therefore the sum of $1.50 for each certificate in force. It is found that there were 570 certificates in force when Kerr died, and it is not disputed by the defendant that this number was subject to assessment. The defendants are in default in not making provision for and paying this sum at least, and plaintiff is therefore shown to be entitled to recover the same in this action. But there being no moneys in the assessment

fund subject to be applied upon this claim, that amount is the limit of plaintiff's recovery.

5. It is contended by the plaintiff that in conformity with the con-. struction which defendant had previously placed on the terms of the policy in respect to payments made from the assessment fund, its uniform usage had been to pay the maximum amount in each case, and that such was the established rule of the company. It is found that prior to the death of Kerr this defendant had paid its certificates in full from the assessment fund. It does not appear, however, that such payments were not made strictly in accordance with the terms of 'the charter, out of funds properly appropriated to such certificates ratably with others. We see nothing in the case to warrant us in assuming that the company has bound itself by any particular rule or usage so as to modify or control the construction of the contract as respects the nature and extent of its obligations to its members.

The difficulties which beset beneficiaries in attempting to collect the maximum sums named in the policy, or, in some cases, any specific sum, in actions for damages upon such contracts, arise intrinsically from the nature of the contract which the parties have made, and which, therefore, the courts are unable to remedy. *Tobin* v. *Western Mut. Aid Society,* 72 Iowa, 261, (33 N. W. Rep. 663.) The plaintiff in this case is entitled to recover the sum of $855, with interest from the commencement of this action. The order denying a new trial will be affirmed, but the case will be remanded, and the order of the district court for judgment will be modified as above.