## MRS. JOSEPH SEILER v. COMMERCIAL ACCIDENT INSURANCE COMPANY.[1]

### November 25, 1921.

### No. 22,461.

**Insurance — construction of accident policy — suicide.**
    1. A policy of accident insurance *held* by its terms to insure against death by violence including suicide.

**Printer's error, not mutual mistake — "including" used for "excluding."**
    2. There was no allegation and no sufficient proof or offered proof of mutual mistake.

**Suicide — parties might exclude that defense.**
    3. It was competent for the parties to agree that, in a policy of insurance against death by violence, the defense of suicide should be excluded.

**Finding sustained.**
    4. The evidence sustains the finding of the jury that the insured was not engaged in an unlawful occupation.

Action in the district court for Ramsey county to recover $5,000 upon an accident insurance policy. The facts are given in the opinion.

[1]Reported in 185 N. W. 383.
    150 M.—23.

The case was tried before Haupt, J., and a jury. Before the introduction of any testimony and when plaintiff rested, defendant's motions to dismiss the action on the plaintiff's statement to the jury that the insured committed suicide, on the ground that such an insurance contract was illegal, were denied. At the close of the testimony defendant's motion for an instructed verdict was denied. The jury returned a verdict for $5,175. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Alphonse A. Tenner* and *Philip J. Meighan,* for appellant.

*Harry A. Hageman,* for respondent.

HALLAM, J.

1. This action is brought by plaintiff as beneficiary under an accident insurance policy issued to her husband, Joseph Seiler. The insured died by a bullet wound self-inflicted. Plaintiff had a verdict. Defendant appeals.

The policy insured against "the effects resulting * * * from bodily injury sustained during the life of the policy solely through violent or accidental means (including suicide, sane or insane * * * )." Although the terms "accident" and "accidental" are frequently used in other portions of the policy, it is plain that the words "violent or accidental means" are broad enough to include the result of violence, not accidental. The language of the policy covered the case and recovery must be sustained, unless defendant can in some manner be relieved from the terms of the policy.

2. One ground of defense is that the use of the word "including" was a mistake, that instead, the word "excluding" was intended. The answer alleges that "said mistake in words * * * was due wholly and solely to oversight, inadvertence and mistake on the part of the defendant." There is no allegation of mutual mistake, no suggestion that terms of a contract differing from the policy issued were ever agreed upon between the parties. We think, too, that the proof offered falls short of showing mutual mistake. There was no offer to prove an agree-

ment as in Haley v. Sharon Tp. Mut. Fire Ins. Co. 147 Minn. 190, 179 N. W. 895. A mistake was no doubt made. As the proof shows, it was a mistake of the printer and of defendant's proof reader in preparing its blank form of policy contract. But the contract was prepared and proffered by defendant and was accepted by the insured as proffered.

The fact that the application was for accident insurance and that the application was accepted, does not make out a preliminary contract upon any particular terms. The expression accident insurance is a very broad one and may, as in this case, include injuries from violence not strictly accidental.

The offered proof that, when the application was taken, it "was discussed" that the policy didn't pay for suicide, falls short of proof of a preliminary contract such as is necessary to warrant relief on the ground of mistake.

3. Defendant contends that, if the policy insures against death by suicide, it is against public policy and void. If the policy were simply a contract of insurance against suicide, the contention would no doubt be well taken. Where the policy insures generally against death by violence and includes suicide, a different question is presented. It has been held that where an ordinary life policy is payable to a beneficiary, without a provision excepting death by suicide, the law of this state permits a recovery, even in the event of suicide when sane. Mills v. Rebstock, 29 Minn. 380, 13 N. W. 162; Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474. Some decisions in other jurisdictions are to the contrary, Ritter v. Mutual Life Ins. Co. of New York, 169 U. S. 139, 18 Sup. Ct. 300, 42 L. ed. 693, but the law is settled in this state.

We see no ground for distinction in this particular between a life policy and a policy insuring against death by violence. The fact is, in either case it is often difficult to determine whether death was due to suicide or not, and it is competent for the parties to eliminate controversy and litigation over this question by simply including or failing to exclude deaths by suicide.

4. The policy contains a clause that the policy shall be void and the company shall be liable only for the return of premiums paid if issued to any person "engaged in unlawful occupation." Defendant contends

that Seiler was engaged in the unlawful manufacture of intoxicating liquor at his place of business. The policy was issued March 12, 1920. The proof as to Seiler's unlawful occupation related to the time of a raid March 24, 1920. The evidence was in conflict. The court submitted to the jury the question whether this provision of the policy was violated. The jury found in the negative. The evidence sustains the finding.

Order affirmed.