## LUCY DOMICO v. METROPOLITAN LIFE INSURANCE COMPANY.[1]

March 16, 1934.

No. 29,771.

216

*Snyder, Gale & Richards,* for appellant.

*Samuel Lipschultz, Sidney W. Goffstein,* and *Eugene A. Monick,* for respondent.

HILTON, Justice.

Plaintiff, the beneficiary in a life insurance policy written by defendant on the life of her husband, Joseph Domico, had a verdict for the full amount claimed. Defendant appeals from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

On January 22, 1931, in St. Paul, Minnesota, defendant, pursuant to an application there made, issued to Joseph Domico a policy on his life in the sum of $3,000. Plaintiff was the designated beneficiary therein. The right to change the beneficiary was reserved. Domico died on December 18, 1931, within the two-year contestability period provided in the policy. The action was commenced in June, 1932, and was tried about a year later. The material issues raised by the pleadings were:

(1) Did the insured in the application for insurance make misrepresentations; if so, were such misrepresentations made with the intent to deceive and defraud defendant, or did they increase the risk of loss?

(2) Did the insured's death occur while committing or attempting to commit a felony (highway robbery)?

The case was tried to a jury. Plaintiff rested after having made out a *prima facie* case under her complaint. Defendant then assumed the burden of establishing its defense.

■ The only indication as to how insured met his death is contained in the proof of death filled out by representatives of defendant and signed by plaintiff, a newspaper clipping attached to the proof of death by defendant's agent, and a photostatic copy of the death certificate. In the proof of death, of necessity procured by plaintiff from defendant and introduced in evidence by her, the cause of death is stated to be "justifiable homicide." The newspaper clipping recited that Domico was slain in Chicago on December 18, 1931, when police officers there interrupted him and another man in a holdup. The death certificate issued by the health department of Chicago, in addition to the certification that Domico died on December 18, 1931, contained a statement by the coroner of that city as follows: "Bullet wound of the chest. Contributory (Secondary) Justifiable Homicide."

In addition to a general verdict, the jury was required to answer the following special interrogatory submitted to it by stipulation of the parties:

"Was the insured, Joseph A. Domico, killed in Chicago on the 18th day of December, 1931, while participating in a holdup?"

The answer was "No."

Defendant's alternative motion for a new trial, in addition to the grounds upon which its motion for judgment notwithstanding was based, was made on the ground of newly discovered material evidence which with reasonable diligence could not have been found and produced at the trial. Affidavits, two of which purported to have been made by the intended victims of the holdup, were offered in support of the motion. The affidavits recited facts which if properly proved would establish the claim that the insured, while committing a felony, was killed by an officer of the law in the discharge of his official duty.

In a memorandum made a part of the order denying defendant's motion the court stated that in its opinion defendant was entitled to a new trial on the special question hereinbefore quoted, saying:

"Defendant could, perhaps, have secured before the trial the affidavits of the Chicago residents, but was deprived of an opportunity to examine and produce the full file of the police department of St. Paul, as a part of it was reported lost at the time. Plaintiff in her testimony referred to the contents of the file. The fact that such testimony might have been objected to, does not alter the situation. I deny a new trial as to that question solely on the ground that an answer to same is immaterial. If it is material, then a new trial as to it should be granted."

Whether the evidence sustains the special finding of the jury or whether defendant is entitled to a new trial on the ground of newly discovered evidence we need not determine, for we agree with the trial court that it was immaterial whether or not the insured while committing a holdup was killed by an officer of the law. The policy provided:

"This policy and the application therefor constitute the entire contract between the parties."

Defendant contracted to pay to Lucy Domico, beneficiary, $3,000 upon receipt of due proof of the death of the insured, with one exception, that of suicide. Its liability for the death of the insured in any other mode was not exempted. Defendant urges that recovery should not here be allowed for reasons of public policy. The exact question before us has never been passed upon by this court. However, it is well settled in this state that death of an insured by suicide even while sane is not a ground of exemption from liability or for forfeiture of a policy issued for the benefit of a third person, unless it is expressly so provided in the policy. Mills v. Rebstock, 29 Minn. 380, 13 N. W. 162; Kerr v. Minnesota Mut. B. Assn. 39 Minn. 174, 39 N. W. 312, 12 A. S. R. 631; Robson v. United Order of Foresters, 93 Minn. 24, 100 N. W. 381; Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474; Seiler v. Commer-

cial Acc. Ins. Co. 150 Minn. 353, 185 N. W. 383. The omission of an exception in the instant policy from liability if insured should be killed while committing a felony by the same reasoning precludes exemption of liability here. One is no more offensive to principles of public policy than the other.

In 6 Cooley, Briefs on Ins. (2 ed.) p. 5201, it is stated:

"In the absence of any provision in the policy excepting such a risk, the insurer is liable, though the insured was killed while committing a felony, if it does not appear that the policy was obtained in contemplation of the commission of a felony and the consequent danger."

Cases following this rule are Zurich General A. & L. Ins. Co. v. Flickinger (C. C. A.) 33 F. (2d) 853, 68 A. L. R. 161; Jordan v. Logia Suprema de la Alianza Hispano-Americana, 23 Ariz. 584, 206 P. 162, 24 A. L. R. 974; Mutual L. Ins. Co. v. Guller, 68 Ind. App. 544, 119 N. E. 173; McDonald v. Order of Triple Alliance, 57 Mo. App. 87; 14 R. C. L. p. 1226, § 407.

Decisions to the contrary are: Hatch v. Mutual L. Ins. Co. 120 Mass. 550, 21 Am. R. 541; Wells v. New England Mut. L. Ins. Co. 191 Pa. 207, 43 A. 126, 53 L. R. A. 327, 71 A. S. R. 763; Piotrowski v. Prudential Ins. Co. 141 Misc. 172, 252 N. Y. S. 313. In the two cases first cited, both involving Massachusetts contracts of insurance, recovery was denied on the ground of public policy. Massachusetts, however, contrary to Minnesota, also denies recovery to a beneficiary where the insured commits suicide while sane, in the absence of a nonliability provision in the policy. Davis v. Supreme Council of Royal Arcanum, 195 Mass. 402, 81 N. E. 294, 10 L.R.A.(N.S.) 722, 11 Ann. Cas. 777. The decision in Piotrowski v. Prudential Ins. Co. 141 Misc. 172, 252 N. Y. S. 313, is by an inferior court. Although perhaps not necessary to a determination of the case, the court made statements indicating that it would not permit recovery where an insured is killed while committing a felony under a policy not specifically covering that risk. New York also is not entirely in accord with Minnesota in regard to liability where the insured commits suicide while sane. Shipman

v. Protected Home Circle, 174 N. Y. 398, 67 N. E. 83, 63 L. R. A. 347.

Appellant cites authorities holding that execution of an insured under sentence of law is a good defense even without any reference thereto in the policy. The authorities are in conflict upon that proposition. Those denying recovery do so on the ground of public policy. 36 A. L. R. p. 1258; 14 R. C. L. p. 1227, § 408. Those permitting recovery hold that where corruption of blood and forfeiture of estate for conviction of crime are abolished, execution of an insured for crime does not prevent the enforcement of the insurance policy by the beneficiary. 36 A. L. R. p. 1256; 14 R. C. L. p. 1227, § 408. We have such a provision in our constitution (art. 1, § 11) and also in our statutes (2 Mason Minn. St. 1927, § 9939). However, that particular question is not here important, and we do not decide it. There was here no conviction, and the property involved was that of plaintiff and not a part of decedent's estate. Cases in which the beneficiary murdered the insured are not in point.

We come now to the question whether the insured at the time of making application for insurance contemplated the commission of a felony. The court fairly and fully submitted that question. The jury by its general verdict found against defendant's contention that Domico at the time of applying for the insurance contemplated engaging in banditry and bootlegging thereafter. The insurance was solicited by agents of defendant, one of whom was its district manager. An arrangement was made at the suggestion of one of the agents whereby the premium for the first year ($77.49) was taken care of by applying the greater portion of a reserve due Domico on three industrial policies that had lapsed for nonpayment of premiums, the balance of which was paid him in cash. The facts which appellant claims conclusively show an intent on the part of insured to subject his life to the dangers of bootlegging and banditry are these: For five or six months just prior to his marriage to plaintiff, which took place in June, 1930, insured had been engaged in bootlegging. Shortly before his marriage he was arrested for that offense and released on bond. He and his attorney appeared in court several times, but the case was not on the calendar and it was never tried. In 1927 the insured, upon his plea

of guilty, was convicted for petty larceny and given a suspended sentence, which was never served. The insured and plaintiff separated in July, 1931, temporarily. Insured then went to live with one Tony Devito. The latter testified that on December 6, 1931, 12 days before insured's death and about 11½ months after the application for insurance was made, the insured, Devito, and another man held up and robbed a garage in St. Paul. Devito stated that the holdup was not planned by either himself or Domico, but that they had been drinking and when the plan was suggested to them by the third man they consented to go along with him. Insured's only occupation between the date of his marriage to plaintiff and the making of the application for insurance was that of mail sorter at the St. Paul post office from December 20 to December 26, 1930. He was out of employment at the time of making the application and thereafter until May 2, 1931, from which time until June 19, 1931, he was employed by a vacuum cleaner company as a salesman. From June 19, 1931, to August 29, 1931, he worked for the Purity Baking Company, St. Paul. Certainly the evidence does not as a matter of law compel a conclusion that the insured at the time of making the application for insurance on his life contemplated exposing it to the dangers incident to a career of crime.

■ The defense of misrepresentations in the application for insurance is predicated upon the following statements made by the insured therein: (a) That his occupation was sorting mail in the United States post office; (b) that his mother died from cancer; (c) that he did not use beer, wine, or other alcoholic beverages; (d) that he had never had an accident or injury; (e) that he had never been an inmate of or received treatment at a hospital; (f) that during the last five years he had not consulted or been treated by a physician; (g) that he had never suffered from any ailment or disease of the heart or lungs; (h) that his former occupations within the last ten years were laundry washman and sorting mail. All of the above statements except the last two mentioned are admitted to be untrue. If either of them was material and if made with intent to deceive and defraud, or if the matter misrepresented increased the risk of loss, even though not made with intent to deceive or de-

fraud, the policy will be avoided. 1 Mason Minn. St. 1927, § 3370. Such questions are usually for the jury to decide. If the evidence conclusively establishes a misrepresentation within the meaning of § 3370, a question of law is presented. Mack v. Pacific Mut. L. Ins. Co. 167 Minn. 53, 208 N. W. 410, and cases cited.

(a-b) Plaintiff testified that she was present when the application was made; that defendant's district manager asked the questions and filled in the answers; that Domico told the manager that he was not then working; that his last place of work was at the post office, sorting mail; that the manager stated: "That's all right, I will put down post office"; that Domico also told the manager that his mother committed suicide because she had cancer of the stomach; that the manager replied: "We don't have to go through all that," and put down "cancer"; that Domico did not read the application after it had been completed but signed it "right away." There is no evidence of collusion between defendant's manager and the insured. Manifestly, under the circumstances, the jury was not required to find other than it did.

(c) The only evidence relative to the insured's use of alcoholic beverages is the testimony of Devito, who stated that prior to the making of the application he and the insured when going to dances would have with them about a half pint or a pint of liquor. How much of it insured drank, or that he drank any of it, is not shown except by inference from the fact that they had the liquor with them. Devito also stated that on the night of the robbery of the garage, December 6, 1931, Domico had been drinking. That incident, however, occurred nearly a year after the signing of the application. Whether the misrepresentation was made with intent to deceive and defraud or whether the matter misrepresented increased the risk was also for the jury.

(d-e-f) On April 18, 1930, Domico sustained a fracture to his right shoulder as a result of an automobile accident. He was taken to a hospital for first aid treatment and carried his arm in a sling for three or four weeks. He did not stay overnight at the hospital. He instituted an action to recover damages for his injury. At the request of an insurance company interested in the outcome of that

action Domico was examined by Dr. Burns on May 22, 1931. That doctor testified that the injury at that time was slight and that there was no pathology in the joint. In the absence of any evidence to the contrary, it is fair to assume that the injury was entirely healed at the time the application was made. It is well settled that general questions in an application for insurance calling for information concerning former ailments do not require the disclosure of ailments of a trivial, temporary, or unimportant nature, but only those of a serious, dangerous, or permanent character. Mack v. Pacific Mut. L. Ins. Co. 167 Minn. 53, 208 N. W. 410. As far as the evidence discloses, the injury sustained by Domico was but of a temporary nature. The burden of showing otherwise was upon defendant. The doctor's examination was not made for the purpose of treatment. The failure of the insured to disclose the circumstance is certainly not, as a matter of law, material, nor conclusive that it was withheld with an intent to deceive or defraud, or that it increased the risk. The same is true with regard to his failure to mention his visit to the hospital.

(g) Dr. Burns further testified that at the examination above referred to he found that Domico's chest, shoulders, and back were not normal, that he had chronic tuberculosis and a mitral heart condition. It does not appear that the insured knew of these afflictions. The doctor did not tell him about them. Before the application was sent in to defendant's home office the insured was examined by defendant's own examining physician, and his report sent with the application to it. That report was not put in evidence, nor was the doctor called, which in itself is significant. 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 3444. Defendant's district manager testified that if the physician's report had indicated that Domico was physically unfit the policy would not have been issued, and that the issuance of the policy indicated that "the doctor furnished a report, O. K." Under the circumstances here the jury was not bound to accept the testimony of Dr. Burns as true. Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474. Even assuming that his testimony was true, it would not here be a ground for avoiding the policy. The failure of the applicant to disclose facts

of which he is ignorant is not a ground for such avoidance. It is generally so held. See cases annotated in 37 C. J. § 169, p. 448, note 93.

(h) There is no claim that the representations as to the insured's legitimate occupations during the specified ten years were false; but it is claimed that the insured, with an intent to deceive and defraud, concealed the fact that he had been in the business of bootlegging and that the matter so concealed increased the risk. That he had been in that business for five or six months some six or seven months prior to making the application is not disputed. There is no affirmative evidence that he was engaged in bootlegging after his marriage to plaintiff. There is evidence that he was not. The evidence is insufficient to show conclusively that the insured intentionally concealed that fact for the purpose of deceiving or defrauding defendant, or that it in fact increased the risk.

■ Defendant assigns as error the court's ruling in sustaining plaintiff's objection to the following question asked of defendant's district manager:

"Do you know whether or not the company would have issued the policy to Mr. Domico if it had known that he had been a bootlegger?"

The duties of the district manager were to supervise soliciting agents in his district and the members of his office force, and also to accept premiums paid directly to his office. He had nothing to do with the approval of applications. The court did not err in sustaining the objection. Mack v. Pacific Mut. L. Ins. Co. 167 Minn. 53, 208 N. W. 410.

We have considered all of the assignments of error and find no ground for reversal.

Affirmed.