In this case the insured was found dead near his wife's burning building immediately after an explosion which wrecked the building. The autopsy revealed that his skull, ribs and cervical vertebrae were fractured and his liver and spleen ruptured, by the walls of the building, thrown down by the explosion, falling upon him. His body also bore first degree burns and multiple contusions. Blood was trickling out of his ears.
The life insurance contract in question, held by the decedent as the insured in favor of his wife as beneficiary, provided for increased indemnity if the "death occur in consequence of bodily injury effected solely through external, violent and accidental means, provided that such death occur within sixty days after such injury independently and exclusively of all other causes."
The only other restrictions or limitations against liability under this policy were that the insurer should be released from liability if the insured should, within *Page 273 
one year from the date of the policy, become engaged in the manufacture or sale of intoxicating liquors unless so engaged at the date of the policy; and if the insured should, within one year, die by his own hand or act. The policy was taken out June 28, 1921. No claim is made that the insured engaged in the manufacture or sale of intoxicating liquors as inhibited by the terms of the contract, nor did he die within one year by his own hand or act. It is also conceded that the death of the insured occurred within sixty days after his injury and that such injury was the sole cause of his death.
The defenses relied upon by the defendant insurance company were: (1) That the decedent, at the time of his death, was engaged in a violation of law, to wit, committing or attempting to commit arson, and while so engaged, was killed; and (2) that decedent's death was not "in consequence of bodily injuries effected solely through external, violent and accidental means." I shall consider these defenses in order.
There was evidence tending to show that the wife's property was overinsured, and that there were some suspicious circumstances as to the origin of the fire, but there was no evidence that the acts of the decedent at the time of his death caused the explosion. There was no evidence that the decedent was engaged in any unlawful act at the time of his death. Accordingly, the jury, in answer to an interrogatory submitted to it as to what acts Hassay was engaged in when he was killed, replied "unknown," and thereby eliminated from the case the so-called first defense, and also any claim that Hassay did any act which caused the explosion.
Furthermore, there was no condition in the policy itself which precluded a recovery in case the death of the insured occurred while he was engaged in an unlawful act, probably for the very good reason that such a condition or limitation would render the policy unsalable *Page 274 
or less salable because of the many contingencies which could arise as to coverage or lack of coverage under such a policy. The defendant is, therefore, obliged to resort to an alleged violation of public policy to defeat a recovery under its contract. The courts have listened many times to this plaint but usually with dull ears. The defendant, not from oversight or mistake, but with deliberate intention, having failed to include this condition in its policy, is not in a good position to ask the court, by way of judicial construction, to insert such condition for defendant's benefit.
Under such circumstances the weight of authority is that the law will not supply such a condition based upon public policy. On this subject 29 American Jurisprudence, 764, Section 1011, says:
"Although there is some authority of a contrary nature in respect of life insurance policies, the view has been taken that in the absence of a provision in an accident insurance policy exempting the insurer from liability for injuries sustained as a result of violation of law, the insurer is liable for an injury so sustained, if it does not appear that the policy was obtained in contemplation of such violation and the danger consequent thereon." See, also, 1 Appleman Insurance Law and Practice, 616, Section 511; Domico v. Metropolitan LifeIns. Co., 191 Minn. 215, 253 N.W. 538; Jordan, Admr., v.Logia Suprema, 23 Ariz. 584, 206 P. 162, 24 A. L. R., 974;Home State Life Ins. Co. v. Russell, 175 Okla. 492,53 P.2d 562.
The case of Zurich General Ace. Liability Ins. Co., Ltd., v. Flickinger, 33 F.2d 853, 68 A. L. R., 161, distinguishes cases, as they must be distinguished, where the death penalty is inflicted as punishment for crime. Of course, death inflicted as punishment for crime is not one of the risks insured against in a life or accident policy, but this is no authority for holding *Page 275 
that accidental death resulting from a violation of law is not covered. On this issue the trial court charged, on request before argument, as follows: "If you find by a preponderance of the evidence that at the time John Hassay came to his death, he was attempting to burn or destroy the house at 75 Courtland avenue, then your verdict must be for the defendant."
In my humble judgment, the trial court erred in so charging the jury, both because there was no competent evidence to establish the facts upon which the charge is based, and because the charge did not correctly state the law.
The second defense made by the defendant is that the death of Hassay was not caused by accidental means. There can be no question but that Hassay's injury and death were caused solely by external and violent means. The walls of the building fell upon him crushing him to death. I agree with the rule of law stated in the first and second paragraphs of the syllabus of this case. Here a presumption that Hassay's death was accidental arose because it was caused by external and violent means. There is no evidence in this record to rebut that presumption. There was no evidence and the jury found none to show that any act of Hassay brought about his death. On the contrary, no clearer case of death by accidental means can be found, unless it appear that there was some act of the decedent so rash in character as to lead him to realize that it would probably cause his injury or death. There is no such testimony.
The Court of Appeals, in its opinion on this question, said: "Plaintiff [decedent's widow] testified that she did not know what caused insured's death. 'No one saw the occurrence,' and an examination of the record discloses no testimony showing or tending to show what caused the explosion, and apparently as far as the record discloses nobody knows, whether it *Page 276 
resulted from a pure accident or from some intentional act of insured, as claimed by defendant or of some other person, an act of God or as said in the case of Wallace v. StandardAccident Ins. Co., 63 F.2d 211, 'from some other cause,'and the jury so found." (Italics mine.)
Clearly, the accidental means here, not only presumed but established beyond dispute from the circumstances, is the explosion which in turn threw down the walls of the building upon the decedent resulting in accidental death. The fact that the decedent voluntarily entered the building or was about the building at the time of the explosion did not change the accidental character of the disaster. Unless decedent's death was the natural and probable result of his act, as to which there is no evidence, his death resulted from accident and through accidental means. Death or injury does not result from accident or accidental means within the terms of an accident policy, where it is the natural result of the insured's voluntary act, unaccompanied by anything unforeseen, except the death or injury. 29 American Jurisprudence, 714, Section 941. Such a situation was present in the case of New Amsterdam Cas.Co. v. Johnson, Admx., 91 Ohio St. 155, 110 N.E. 475. Nothing unforseen happened there prior to death by dilation of the heart. In the case of Burns v. Employers' Liability AssuranceCorp., 134 Ohio St. 222, 16 N.E.2d 316, cited in the majority opinion, this court held that because of a break in a water pipe infecting drinking water which Burns drank, the infection was taken into his system by accidental means, but his dysentery which followed, resulting in death, was a disease and not an accident. The Court of Appeals in the instant case, and the majority opinion of this court, cite the case ofMitchell v. New York Life Ins. Co., 136 Ohio St. 551, 553,27 N.E.2d 243, to the effect that "the fact that the result *Page 277 
was accidental does not make the means, which produced such result, likewise accidental." The writer of this dissent expressed his view of the definition and application of "accidental means" in a dissent in that case which involved unexpected consequences from a voluntary act upon the part of the insured, resulting in his injury and death. The case at bar still more clearly exhibits the presence of "accidental means."
The correct rule to be applied to the instant case, in my opinion, is stated in 29 American Jurisprudence, 714, Section 941, as follows:
"Where * * * the death or injury is not the natural or probable result of the insured's voluntary act, orsomething unforeseen occurs in the doing of the act, the death or injury is held to be within the protection of policies insuring against death or injury from accident and is by some courts held to be within the protection of a policy insuring against death or injury produced by or resulting from accidental means. According to this view, if in the act which precedes the death or injury, although an intentional act,something unforeseen, unexpected, and unusual occurs which produces the death or injury, it is accidentally caused or results from accidental means." (Italics mine.)
See, also, U.S. Mut. Acc. Assn. v. Barry, 131 U.S. 100,33 L.Ed., 60, 9 S.Ct., 755; Equitable Life Ass. Soc. v. Hemenover,100 Colo. 231, 67 P.2d 80, 110 A. L. R., 1270; Ashley v.Agriculture L. Ins. Co., 241 Mich. 441, 217 N.W. 27, 58 A.L.R., 1208; Taylor v. New York Life Ins. Co., 176 Minn. 171,222 N.W. 912, 60 A. L. R., 959; Mansbacher v. Prudential Ins. Co.,273 N.Y. 140, 7 N.E.2d 18, 111 A. L. R., 618; Lewis,Exrx., v. Ocean Acc. Guar. Corp., Ltd., 224 N.Y. 18,120 N.E. 56, 7 A. L. R., 1129, and annotation 1131; Richards v.Standard Acc. Ins. Co., 58 Utah 622, 200 P. 1017, 17 A.L.R., 1183. Whatever may have caused *Page 278 
the explosion in this case, it must be clear that it was not intended or even foreseeable by the insured.
I am unable to agree with the majority opinon of this court wherein it says: "Where one of his own volition follows an intended course of conduct, culminating in injury or death, the result may be accidental but not the means." The fallacy of this position may be illustrated by a simple illustration. Suppose one in descending a stairway places his weight upon a defective step which gives way, precipitating him to the bottom of the stairway, resulting in his injury. He of his own volition followed an intended course of conduct in attempting to descend the stairs. This course of conduct culminated in his injury. To say that there was or could be no accidental means, denies the whole doctrine of accidental means. The unexpected breaking of the step clearly was an accidental means which produced his accidental injury.
In my judgment, the plaintiff's motion for a directed verdict should have been sustained, and when afterward the jury found that the acts of the decedent at the time of the explosion were unknown, the court should have granted plaintiff's motion for judgment notwithstanding the verdict.
This court, in the majority opinon, finds no error in the court's charge which also leads to an affirmance of the judgment. For reasons already stated, I think the trial court erred in giving certain instructions before argument and thereby gave warrant to the jury to find that there was no accidental means.
For instance, the court charged the jury before argument as follows: "If John Hassay voluntarily and intentionally employed the means which produced his death then there can be no recovery." Under this charge, if the decedent had inadvertently struck a match to light his pipe, and the flame ignited gasoline fumes causing the explosion, the plaintiff could not *Page 279 
recover. The error is apparent. In other words, before a recovery can be denied, the means, if any, employed by the decedent which resulted in his death, must have been such as would appear to him to be likely to cause his injury or death.
The court also charged the jury before argument that "A means is not accidental within the terms of the policy * * * because some unexpected result followed in addition to that which was intended to be accomplished." The same illustration and comment above made applies also to this charge.
Because of these errors in the charge, if the plaintiff was not entitled to judgment, the judgment in favor of the defendant should be reversed and the case remanded for a new trial.