# MILDRED I. STACY v. BURDETT GOFF AND ANOTHER.[1]

February 26, 1954.

No. 36,082.

[1]Reported in 62 N. W. (2d) 920.

*Chester G. W. Gustafson* and *Amherst Tautges,* for appellant.
*Carroll & Thorson,* for respondent Taylor.
*Warren B. King,* for respondent Goff.

THOMAS GALLAGHER, JUSTICE.

Action by Mildred I. Stacy, plaintiff, for damages sustained as the result of an automobile accident which occurred June 23, 1948, at the intersection of state highway No. 100 and U. S. highway No. 169 in Hennepin county. Plaintiff was a passenger in a car driven by George Taylor which collided with a car driven by Burdett Goff, and she joined both as defendants in her action. Ellen Taylor, wife of Taylor and also a passenger in his car, instituted a separate action against Goff from injuries sustained by her as a result of the accident. Goff, in turn, instituted a separate action against Taylor for his damages in which Taylor interposed a counterclaim.

The actions were all tried together. In the Stacy action, the jury returned a verdict against Taylor for $7,905 but found in favor of Goff. In the Ellen Taylor action against Goff, the jury found in favor of Goff. In the Goff action against Taylor, the jury found in Goff's favor in the sum of $3,000.

Subsequently, Mrs. Stacy, hereafter referred to as plaintiff, moved (1) to set aside the verdict in her favor and for a new trial on the issue of damages only as to each of the defendants, on the ground that her verdict was inadequate; (2) for an order determining, as a matter of law, that Goff was liable for any damages sustained by her; or (3) in the alternative for an order vacating the verdicts and granting a new trial against both defendants on all issues. Taylor then moved for an order setting aside the verdict in favor of Goff and for an order that the latter be held jointly liable with him for the verdict returned in favor of plaintiff; or in the alternative that all verdicts be set aside.

On December 20, 1952, the trial court granted plaintiff's motion for a new trial on all issues on the ground that it had erred in failing to instruct the jury that Goff was guilty of negligence as a matter of law. Subsequently defendants, Taylor and Goff, joined in a motion for an order vacating the order granting a new trial and for an order that judgment be entered in favor of plaintiff against both Taylor and Goff for the full amount of the $7,905 verdict returned in plaintiff's favor.

On February 9, 1953, the court vacated the order of December 20, 1952, which granted plaintiff a new trial and ordered that judgment for the verdict returned in plaintiff's favor be entered against both Taylor and Goff. From this order plaintiff appeals.

On appeal two principal issues are raised: (1) Whether the court's failure to instruct the jury that Goff was negligent as a matter of law constituted prejudicial error not remedied by the subsequent order holding him jointly liable for the amount of plaintiff's verdict and whether thereby plaintiff had been denied her constitutional right to a jury trial on the issue of Goff's liability for her damages; and (2) whether the verdict of $7,905 in plaintiff's favor was so inadequate as to indicate that it had been given under the influence of passion and prejudice.

■ Assuming without deciding that the negligence of Goff appeared as a matter of law, nevertheless it would seem clear that the ultimate order for judgment against him for the full amount of plaintiff's verdict eliminated any prejudice which resulted to plaintiff by reason of the failure of the court to so instruct the jury. His acquiescence in the order directing that he be held liable with Taylor for the full amount of plaintiff's verdict left the case in exactly the same position as though the jury originally had been instructed that his negligence appeared as a matter of law. We cannot assume that had it been so instructed a larger verdict in plaintiff's favor might have been returned because two rather than one defendants were liable for her damages.

A claim arising out of personal injuries must be based upon evidence of such injuries, the expenses incurred or to be incurred because thereof, and other damages or losses sustained as a result.

Damages for such items are measured by the evidence submitted to establish them rather than by the number of defendants involved in the litigation. Where joint tortfeasors are named as defendants in a single action, the damages against each must be the same. Restatement, Torts, § 882c.

Here two issues were submitted to the jury, i.e., negligence and damages. When it assessed plaintiff's damages at $7,905, it must be presumed that it did so believing that the evidence established this amount as sufficient to cover the full damages sustained because of the accident. See, Bakken v. Lewis, 223 Minn. 329, 26 N. W. (2d) 478; Warren v. Westrup, 44 Minn. 237, 46 N. W. 347.

■ The adequacy of a verdict to compensate a plaintiff for injuries and damages sustained ordinarily is addressed to the sound discretion of the trial court. Here the memorandum made part of the order denying plaintiff a new trial because of the inadequacy of the award stated that the court had exercised its discretion therein on the basis of "all of the testimony, including certain impeachments of the plaintiff and evidence of prior injuries and physical conditions, as well as certain of plaintiff's own medical testimony." Defendants urge that evasions, inconsistencies, and inaccuracies of plaintiff in her testimony justified the jury in refusing to accept as factual her claim (1) that all of the disabilities to which she testified were real; or (2) that all of them had been the result of the accident of June 23, 1948.

The evidence submitted in support of and against plaintiff's claims for injuries, disabilities, and special damages may be divided into two classes:

(1) Evidence relating to a badly comminuted fracture of her left clavicle requiring application of traction for approximately three weeks; moderate injuries to her brachial plexus nerve center and left shoulder; lacerations and bruises to her face, head, leg, and back; hospitalization from June 23, 1948, to August 18, 1948; medical and hospitalization expenses in the sum of $2,449.85; and inability to resume employment for a period of at least 199 weeks for a total wage loss of $7,960.

(2) Evidence relating to injury to the cervical spine, accompanied by pain in the side of neck, back, head, shoulders, and fingers, first noticed by plaintiff about December 1, 1948; hospitalization between November 3, 1949, and December 16, 1949; surgery, described as a laminectomy, on November 5, 1949; use of a neck and shoulder brace for 165 weeks; medical and hospital expenses in the sum of $814.75; and inability of plaintiff to resume employment for 119 weeks following the laminectomy, for a wage loss of $4,760 during this period.

The principal conflicts in the evidence relative to the above may be summarized as follows:

Plaintiff presented testimony that she was unable to walk unassisted until approximately six months after the accident. Defendants presented evidence that hospital charts indicated she was able to walk without assistance two or three weeks following her discharge from the hospital.

Plaintiff testified that she was unable to resume housework until subsequent to Christmas 1951 because of the blow to her shoulder which caused a fracture and injured the nerve centers and resulted in pain, numbness, and a tingling sensation and atrophy to her left arm requiring some physiotherapy treatments at the Curative Workshop and further medical services. Defendants presented testimony that during the fall of 1949 plaintiff had visited a tavern several times; that she had taken bus rides alone to visit her daughter; and that on two occasions during the fall of 1949 she had taken car trips to northern Minnesota.

Plaintiff testified that because of the pain and numbness in her shoulder and arm and because of the necessity of wearing the neck and shoulder brace, she was unable to resume employment at any time prior to trial. She presented medical testimony that her ability to work at all would depend upon her ability to tolerate pain, that because of pain she could not do work requiring any unusual use of her left arm or shoulder, and that the injuries to the nerves of her left arm were permanent. Defendants presented testimony as to plaintiff's activities as above described and, in addition, elicited on cross-examination of plaintiff's physicians medical testimony to

the effect that her neck and shoulder brace should have been removed about April of 1951.

Plaintiff presented testimony that she had first felt pain and numbness in her neck in December 1948 and so reported to Dr. John Galloway; that Dr. Galloway had then recommended that she consult Dr. Leonard A. Titrud. Dr. Titrud testified that upon examination he had discovered a loosening of the cervical vertebrae affecting the nerves of the neck and shoulder and that ultimately, to relieve the pain caused thereby, he had performed a laminectomy and recommended the use of a neck and shoulder brace for a time thereafter and that, in his opinion, the accident of June 23, 1948, was the proximate cause thereof. Defendant presented testimony that plaintiff had sustained an injury in an automobile accident in 1933 that affected her lower back; that she also strained her back while working in 1947; that she made no complaint of any pain in the neck region at any time before December 1948; that had the accident caused this disability, immediately thereafter, according to Dr. Titrud's testimony, she would have felt pain in that area; that, hence, it was possible but not probable that the neck injury may have been an "anomaly"; and that the hospital chart in describing her injuries when she was first admitted to Swedish Hospital designated the neck as "negative."

Plaintiff submitted medical testimony to the effect that the left upper arm was approximately one-half inch less in circumference than the right upper arm; that the left forearm was approximately one-fourth inch less in circumference than the right forearm; and that this condition may have been caused as a result of nonuse of the left arm subsequent to the accident. On cross-examination defendants established that it is customary and normal for the left upper arm and forearm of a right-handed person, as was plaintiff, to be smaller in circumference than those of the right.

■ Separate and apart from general damages, plaintiff submitted evidence of special damages, exclusive of loss of wages, which totaled $3,264.60, mostly for medical and hospital expenses. No medical testimony was presented by defendants to establish that plaintiff's

neck injuries were not due to the accident of June 23, 1948. They did submit evidence that plaintiff had sustained an injury to her lower back in 1933 and a back strain in 1947, but neither of these appear from such evidence to have been related to her subsequent disabilities. It is only fair to conclude, therefore, that whatever injuries she sustained to her neck, shoulder, and upper part of her back were directly due to the accident and the direct cause of the special damages above described.

With respect to plaintiff's claim for loss of wages, it was her testimony that she had been unable to work up to the date of trial. While Dr. Galloway was of the opinion that she might have removed her neck brace in April 1951, Dr. Titrud expressed the opinion that the injury to the brachial plexus nerve center was still evident at the time of trial and might interfere with her capacity to perform her customary work for some length of time thereafter because of pain connected therewith and that she would be unable to perform any work that would require "unusual use" of her left arm. Even assuming that plaintiff was able to resume her employment as a saleswoman in April 1951, at which time, Dr. Galloway testified, she might have removed her brace, it would still leave a period of 145 weeks during which, according to her testimony and the testimony of Dr. Titrud, she could not have worked and which at her salary of $40 per week caused a further loss in the sum of $5,800. The only evidence submitted to controvert that of plaintiff's on this issue was that she had taken two automobile trips to northern Minnesota prior to her neck operation and that she had been able to travel about by bus in Minneapolis during the early part of 1949— evidence rather remote and speculative as the basis for any serious consideration of this question.

Her loss of wages in the sum of $5,800 added to her damages for medical, hospitalization, and like expenses in the sum of $3,264.60 totals $9,064.60 or $1,159.60 in excess of the verdict returned in her favor. Stating it in another way, if the damages for medical, hospitalization, and like expenses were subtracted from the verdict, the resultant $4,640.40 would be expected to compensate plaintiff for pain, suffering, permanent disability, and loss of wages. Con-

sidered in this light, the verdict returned is so inadequate as to have the appearance of being influenced by passion and prejudice. Olson v. Christiansen, 230 Minn. 198, 41 N. W. (2d) 248; Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582; Stenshoel v. G. N. Ry. Co. 142 Minn. 14, 170 N. W. 695.

Defendants required plaintiff's examination by two doctors of their choice. They made a thorough examination, and they may be presumed to have been fairly well informed as to plaintiff's physical condition. They were not called to testify by the defendants. There is a presumption, where a jury verdict is challenged, giving rise to an inference that the reason for not calling them is that their testimony would be unfavorable to the defendants. Schultz v. Swift & Co. 210 Minn. 533, 299 N. W. 7; Rice v. New York L. Ins. Co. 207 Minn. 268, 290 N. W. 798; Domico v. Metropolitan L. Ins. Co. 191 Minn. 215, 253 N. W. 538; M & M Securities Co. v. Dirnberger, 190 Minn. 57, 250 N. W. 801. The presumption may be considered by this court in an independent examination of the evidence and regarded as strongly sustaining the other evidence adduced by the party whom it favors. Kulberg v. National Council, 124 Minn. 437, 145 N. W. 120. Here the failure to call defendants' doctors lends additional support to the other factors pointing toward the inadequacy of the award as being due to passion and prejudice.

Because of the many close questions relating to negligence, there is also the possibility that the verdict may have been the result of a compromise on the issue of liability and damages. Flaugh v. Egan Chevrolet, Inc. *supra*. For these reasons we feel that justice will best be served if a new trial be ordered on all issues.

Reversed and new trial ordered on all issues.

KNUTSON, JUSTICE (dissenting).

I think that there should be an affirmance. It may be true that the evidence in this case would sustain a larger verdict. It is also true, however, that there is substantial support for the verdict which we have. We have so often said that the matter of granting a new trial for inadequacy or excessiveness of a verdict is a matter resting almost wholly in the discretion of the trial court that it no

longer needs any citation of authority. 5 Dunnell, Dig. & Supp. § 7133. It is only when the verdict is so inadequate or excessive that we are convinced that it could only have been rendered on account of passion or prejudice that we have a right to interfere. On this theory we have affirmed many verdicts of late years which seemed too high. It may well be that the time has come for us to use a new yardstick in determining whether a verdict is excessive or inadequate; but until we do so, we should be consistent and apply the same rule for determining whether a verdict is inadequate as we do for determining whether it is excessive. The question in either case is not whether we would have returned a higher or lower verdict had we been sitting as the jury but whether the verdict returned by the jury is so inadequate or excessive that it could only have been rendered on account of passion or prejudice.

Here, part of the most serious injuries claimed by plaintiff are those which she suffered to her upper back. Without going into great detail, the evidence shows that, prior to the accident resulting in the injuries for which she now seeks to recover, she had been involved in two other accidents. In one she suffered a serious injury to her back and in the other she suffered a strain to her back. After the current accident, she failed to complain of any pain in her neck until five months after the accident. There is medical evidence that an injury of the type she now claims to have suffered would have resulted in immediate pain. There is other evidence, which we need not recite, from which the jury could come to the conclusion that not all of plaintiff's present troubles arose from the accident here involved. The verdict is substantial. If we discount the injuries which the jury could have found resulted from other accidents, it seems to me that it is not so inadequate that we can say it was based on passion and prejudice. Nothing in the record, aside from the amount of the verdict itself, would establish passion or prejudice. The trial court in its memorandum to its order denying a new trial, said:

"In view of all of the testimony, including certain impeachments of the plaintiff and evidence of prior injuries and physical condi-

tions, as well as certain of the plaintiff's own medical testimony, the Court is not justified in disturbing the finding of the jury upon the ground that the verdict is inadequate."

The trial court had the opportunity of observing plaintiff and her witnesses. I think that his analysis of the evidence should stand.

MATSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Knutson.

