### JOHN MOVERN v. THERESIA SCHARABON, EXECUTRIX, ETC.[1]

July 21, 1922.

No. 22,907.

Meaning of "old customers", as the words appear in partnership agreement. Meaning of contract construed, *held* that the manifest intention of the parties thereto was that the words "old customers" referred to and were intended to mean those parties only who purchased exchange from Joseph Scharabon during the years 1917 and 1918.

Joseph Movern filed a claim in the probate court for St. Louis county against the estate of Joseph Scharabon, deceased, and the claim was allowed at $890.43. Theresia Scharabon, executrix of

[1]Reported in 189 N. W. 578.

the will and estate of decedent, appealed to the district court for that county where the appeal was heard by Cant, J., who made findings and ordered judgment in favor of claimant for $816.78 and interest. From an order denying her motion to amend the findings or for a new trial, defendant appealed. Affirmed.

*Hans B. Haroldson,* for appellant.

*A. G. McKnight,* for respondent.

QUINN, J.

Respondent filed a claim against the estate of Joseph Scharabon, deceased, claiming one-half of the net earnings of the partnership business conducted with decedent. The probate court allowed the claim and an appeal was taken to the district court where pleadings were framed, the issues tried, findings made and judgment ordered in favor of the claimant for the major part of his claim. From an order refusing to amend the findings and denying a motion for a new trial, the executrix appealed.

On August 1, 1919, respondent and appellant's testator, Joseph Scharabon, entered into an agreement whereby they formed a partnership for the purpose of carrying on a brokerage business, such as selling steamship tickets, foreign exchange, buying and selling bonds, etc. By the terms of the agreement Scharabon was to devote his entire time to the business and respondent was to give his noon hours and evenings thereto. Each was to share equally in the net earnings. The partnership continued until the time of Scharabon's death on January 15, 1920. The net earnings amounted to about $1,837.17. Paragraph 3 of the agreement provides as follows:

"For the services performed by each party hereinbefore named, it is understood and agreed between said parties that they shall equally share the profits and the losses of said business, except from the commission from the moneys to be sent to the old country by Joseph Scharabon's old customers, in which commission John Movern, party of the second part, shall have no share. The old Joseph Scharabon's customers shall be classed those persons who were sending moneys to the old country through Joseph Scharabon during the years 1917 and 1918."

The determination of the issues depends upon the construction to be placed upon the portion of the agreement above set forth. Joseph Scharabon was an Austrian by birth. He was engaged for many years in the saloon business at Duluth. As a side line he carried on the business of foreign exchange and the selling of steamship tickets. He stood well among his countrymen and did a large business with them. At the time here involved he had ceased to be in the saloon business. Respondent is a Slovenian and speaks and writes that language. He drew up the agreement in question, and had a large mailing list of Austrians to whom letters could be sent, soliciting exchange business. It is contended on behalf of the appellant that customers secured in this way would be new customers in whose business plaintiff was to share, while it is claimed on behalf of the respondent, that the words "Joseph Scharabon's old customers" as used in the agreement, had reference to the customers who had bought foreign exchange during the years 1917 and 1918 only, and did not include those who became customers in prior years and failed to make remittances during the two years mentioned.

In construing the agreement, the trial court held that the "old customers" referred to were those who bought exchange from Scharabon during 1917 and 1918, and did not include those who became customers in prior years and failed to make remittances during the two years mentioned. The court also found that there were but four of such 1917-1918 customers who purchased exchange from the partnership, and that the commission received thereon amounted to $118.60, which should be deducted from the net amount received by the partnership before the division thereof, leaving the sum of $1,718.57, of which respondent is entitled to one-half, less the sum of $42.50 which he had formerly received, and directed judgment in his favor for $816.78, with interest from February 10, 1921, together with costs and disbursements. We think the construction placed upon the contract by the trial court was entirely correct.

It is manifest that all the parties intended by the last provision of the contract above quoted, was to clearly designate the "old

customers" to be excluded in the division of profits. It cannot be construed as nullifying what precedes it.

Affirmed.

DIBELL, J. (dissenting.)

I dissent:

When Scharabon and Movern made their agreement on August 1, 1919, they had in view the former customers of Scharabon, valuable to the new copartnership because of his good standing with his countrymen. When Scharabon went to the old country, as he anticipated doing, Movern was to have the good will of the business conducted in Scharabon's name. They thought that Scharabon ought to have some reward for the business which he had built up through so many years of honest dealing and to which Movern was to succeed. They sought to give it by reserving to him a greater share of the profits of the copartnership. They tried to work it out by giving him the profits coming from a part of his old customers; and they did it by saying that he should have the profits coming from his old customers but defined the term "old customers" so as not to include all. Movern wrote the agreement and the language used requires construction. My judgment is that it should be construed as if it read that among or with Scharabon's old customers should be included or "classed" those of the years of 1917 and 1918. Either the parties, having in mind Scharabon's present customers, intended to include with Scharabon's 1919 customers those of 1917 and 1918, they together constituting his "old customers," fixing the beginning of 1917 as the date back of which they would not go; or they intended to include all of Scharabon's customers from the beginning down to the end of 1918, leaving the 1919 customers for the copartnership. There is a reason for either construction. There is no reason apparent why the parties should select for Scharabon his customers of the years of 1917 and 1918, which were lean years because the war interrupted commercial intercourse with Austria, and say that those before the two year period and after it were not old customers but new ones of the copartnership. Perhaps neither suggested meaning can be given with the evidence as it is. Perhaps

the language is so ambiguous that the definition of "old customers," as written by Movern, cannot have effect. On a new trial evidence might be adduced aiding a construction. I do not agree with the construction adopted by the majority.

HOLT, J. (dissenting.)
I agree with Justice Dibell.