## S. S. ROBYN v. JAMES G. WHITE AND ANOTHER.[1]

July 28, 1922.

No. 22,810.

**Secret profit made by buyer's agent.**

    1. There is evidence sufficient to establish the fact that plaintiff employed defendants as his agents to purchase for him a tract of land and that they made a secret profit in the purchase.

**Both defendants liable, if joint participants.**

    2. If defendants were joint participants, both are liable if there be liability at all, and admissions and conduct of each in carrying out the joint undertaking may be shown in evidence against the other.

**Verdict not invalid.**

    3. A recommendation of the jury that plaintiff donate the amount recovered to the Red Cross did not vitiate the verdict.

**Impeachment of verdict by jurors not permitted.**

    4. Affidavits to show that this recommendation was effective in bringing about an agreement do not furnish ground for a new trial. Jurors may not in this manner impeach their own verdict, nor will the court inquire into the logic employed by jurors among themselves in reaching their verdict.

Action in the district court for Kanabec county to recover $2,948. The case was tried before Searles, J., who when plaintiff rested denied separate motions of defendants to dismiss the action and at the close of the testimony denied their separate motions for directed verdicts, and a jury which returned a verdict against both defendants for $2,300. On motion of plaintiff the verdict was amended to read $2,580. From an order denying their motions for judgment notwithstanding the verdict, defendants appealed. Affirmed.

*Cray & Eaton* and *P. S. Olson,* for appellants.

*E. N. Best, J. C. Pope* and *A. M. Higgins,* for respondent.

[1]Reported in 189 N. W. 577.

HALLAM, J.

1. There is evidence to prove the following facts:

In August, 1917, plaintiff was a farmer living in Iowa. Defend-ant Hoitenga was his cousin and was in the land business at Ogilvie, Minnesota. Defendant White was in the same business at the same place. Plaintiff sold his Iowa farm. While on a trip to Iowa, defendant Hoitenga urged plaintiff to look for a farm in Minnesota. Soon thereafter plaintiff came to Ogilvie. Hoitenga introduced White as his partner. They went together to look at land. Finally White suggested the Altnow farm of 168 acres. Altnow, the owner, lived in Minneapolis. Defendants did not have this farm for sale. Plaintiff proposed to White and Hoitenga that they buy this Altnow farm for him and offered to pay them one dollar an acre for their services if they succeeded. It was planned that defendants should write Altnow in regard to a sale of the farm. A few days later White told plaintiff Altnow wanted to sell the farm, but gave no price. In the conversation that followed, plaintiff said he would go as high as $85 an acre but he said: "You buy as cheap as you can," and said: "I will give you a dollar an acre commission." Soon thereafter plaintiff and both defendants went to Minneapolis together. It was understood that White should see Altnow. White later reported that he had seen Altnow and that it was a hard proposition to get the farm, that Altnow said it was worth $100 an acre, but he was to see him again next day. On the next day White went out again and returned and said he had bought the farm at $85 an acre and plaintiff then and there wrote a check to White for $1,168, the initial payment of $1,000 and $168 commission. Some time later plaintiff received from White an option contract to purchase the land at $85 an acre and about a month later received a formal contract from White for the sale of the land at $85 an acre.

The transaction was finally closed in accordance with that contract. In fact White bought the land from Altnow for $11,500, and it is claimed White and Hoitenga pocketed the difference. Plaintiff brought this action, claiming that defendants were his agents, and that they had secured a secret profit, and he asked to

recover the difference between the amount he paid defendants and the amount paid Altnow. Plaintiff had a verdict in the usual form against both defendants for the amount demanded. Appended to it was the following:

"We, the jurors recommend that the sum of twenty-three hundred ($2,300.00) dollars claimed to be recovered by this suit be donated to the American Red Cross."

(Signed by each · juror.)

From an order denying separate motions for judgment notwithstanding the verdict or for a new trial, defendants appeal.

No question is raised that there is evidence sufficient to establish the fact that plaintiff employed defendants as his agents and that they made a secret profit and that plaintiff is entitled to recover.

2. Defendants make this exception: That throughout the case testimony was admitted over the separate objection of the defendants as to conversations or acts of one of defendants alone which, it is said, were not connected up so as to show any knowledge on the part of the other. Letters, contracts or statements of White were admitted, which, it is said, were not material or competent to prove any issue as to Hoitenga, and statements or conversations of Hoitenga were· received which, it is said, were not material or competent to prove any issue as to White.

The complaint alleged that plaintiff's negotiation was with both defendants; that he authorized both to act as his agents; that he paid the purchase price to both; that both participated in deceiving him and in the breach of trust and in the appropriation of the profit. There is evidence to sustain a finding that these defendants were joint participants in the transaction and that both are liable, if there be liability at all.

The court instructed the jury that if defendants were acting jointly and undertook to act as plaintiff's agents in procuring this farm for him they were both liable, if but one was his agent that one would be liable and the other would not, and he submitted to the jury the question of joint and of separate liability and permitted a verdict against both or either. The jury found both liable. This

was a finding that defendants, acting jointly, undertook to act as plaintiff's agents. We must accept that then as the fact. Being joint actors, the acts, contracts, admissions and conduct of each in carrying out the joint undertaking may be shown in evidence against the other. There was no error in the admission of evidence.

3. Contention is made that the generous recommendation that plaintiff donate the amount of his verdict to the Red Cross vitiated the verdict and requires us to set it aside. It would have been good practice to direct the jury to again retire and return a verdict unburdened with any such recommendation, but we cannot hold that this recommendation annuls the verdict. Just what prompted it is not certain. The jury had been out about 24 hours and had had much trouble in reaching an agreement. They had returned twice for instructions and once reported that they could not agree. Perhaps they were influenced to recommend this liberality by the fact that plaintiff had been willing to pay the full price paid by him for the land, had defendants been obliged to pay that much. Perhaps the recommendation aided in bringing about unanimity. It would seem that no juror could have been so ignorant of court proceedings as to believe that such recommendation could be enforced. But, however that may be, we think the better rule is that when there is a verdict clear and sufficient in all respects, such foreign and irrelevant matter may be rejected as harmless surplusage. It is much the same in principle as a recommendation of clemency. This has never been held to vitiate a verdict. Patterson v. U. S. 2 Wheat. 221, 4 L. ed. 224; 29 Am. & Eng. Enc. (2d ed.) 1027.

4. Defendants produced affidavits of jurors to show that this recommendation was effective in bringing the jury to an agreement. These affidavits do not afford a ground for granting a new trial for several reasons.

One reason is that a verdict cannot be impeached by affidavits of jurors as to what transpired in the jury room. State v. Stokely, 16 Minn. 249 (282); State v. Mims, 26 Minn. 183, 2 N. W. 494, 683; State v. Lentz, 45 Minn. 177, 47 N. W. 720.

Another is that the court cannot enter upon inquiry as to the logic employed by jurors among themselves in reaching their verdict.

We have a good average of good verdicts, but many a just verdict is doubtless reached by the employment of logic that might not appeal to a trained legal mind. Jurors must be permitted to work out results in their own practical way.

Some objections have been made to portions of the charge. We have examined them all. The charge as a whole was fair and presented the issues to the jury in clear language. We find no error.

Order affirmed.