SILAS C. GILBERT v. PETER MEGEARS AND ANOTHER.[1]

November 9, 1934.

No. 30,056.

[1]Reported in 257 N. W. 73.

*Thomas Mohn* and *Horace W. Mohn,* for appellants.
*Gurnee & Ofstedahl,* for respondent.

*HOLT, Justice.*

From the order denying defendants' motion in the alternative for judgment notwithstanding the verdict or a new trial they appeal.

Plaintiff recovered a verdict against defendants for personal injuries received when he was assisting in shingling a barn, then being built on defendant Pahl's farm in Goodhue county. There is not much dispute in respect to the main facts. Pahl owned the farm. When he tore down the old barn thereon to make room for the new, some of his neighbor farmers helped him, plaintiff being one of them. Those so assisting were not paid and did not expect to be paid. They, however, expected a return of like help if they had need thereof in like undertakings. Pahl and his sons built the concrete basement for the barn. Defendant Megears was a building contractor and had a crew of four carpenters. Pahl hired Megears to supervise the construction of the part of the barn above the basement, which was to be of frame, 32 feet wide by 60 feet long, with 16-foot posts. There were no plans and no written contract, but the talk was that the material fit to use from the old barn should be incorporated in the new; that what more was required should be furnished by Pahl; that Megears and his crew should do the work, the wages of the crew to be paid by Pahl; and that Megears was to be paid 70 cents an hour for supervising the construction and for working as a carpenter. Pahl, his sons, and any other men that might be willing to help were welcome to do so. When the work had progressed sufficiently, there was the usual barn-raising at which neighboring farmers were called in to assist. A few days later the barn was ready for shingling, and word was passed to neighbors that help would be acceptable. The day set for shingling was Saturday, June 28, 1930. Accordingly, at about eight o'clock in the morning plaintiff came to the place ready to help. He found the scaffold on the east side of the barn in place and Megears and some men upon it at work. Megears directed plaintiff to bring a bundle of shingles up a ladder placed against the scaffold and go to work. He gave the same direction to another neighbor farmer. Both did as requested. The scaffold was supported by five triangular brackets, one side of which was spiked to the side of the

barn, and 16- or 18-foot 3-inch planks were laid on top of the brackets. The distance between each bracket was about 15 feet, one being in the center. The day was very windy, and so one person laid and held down the shingles while another did the nailing. When plaintiff and the man who came up on the scaffold with him began to work there were five other men thereon. In about ten minutes thereafter and when plaintiff was just above the center bracket, it gave way and precipitated the several men on the planks it supported to the ground, plaintiff and Megears among them. Plaintiff was severely injured.

The complaint alleged in substance that Megears agreed with Pahl to furnish the labor and supervise the construction and Pahl was to furnish the material and pay Megears for the labor and supervision; that both requested plaintiff to assist in the shingling on June 28, 1930; that plaintiff was to receive no money compensation but that it was understood that Pahl would furnish plaintiff help in return; that before the day mentioned defendants had erected the scaffold for the use of those who were to do the shingling, but that they had negligently and carelessly constructed the same and failed to fasten the same adequately to the side of the barn, and on account of such negligence the scaffold collapsed, causing plaintiff's injury and loss.

Separate assignments of error are made in behalf of each defendant. But many are common to both. It will not be necessary to discuss all. One of the main contentions of Pahl is that Megears was as a matter of law an independent contractor; hence it was error to deny his motions for a directed verdict and for judgment *non obstante.* The court rightly denied the motions, for the evidence abundantly supports the finding of the jury that he was not an independent contractor. It is difficult to conceive of one working for a stipulated hourly wage as being an independent contractor. That Pahl also employed Megears' customary crew does not signify, for Pahl also paid their wages. That in the work Megears was in control and directed those under him is not conclusive. Every foreman or superintendent of any construction requiring the coöperative labors of several men is in control and directs the work each is to

perform, but he does so as the servant and agent of the one who employed him as foreman or superintendent. Here the evidence shows that no agreement stood in the way of Pahl discharging Megears at any time. Pahl and his sons were privileged to do as much of the work as they wanted and thus curtail the earnings of Megears and his crew. The jury could properly find that Megears was Pahl's working foreman on the job. Hence the rule of *respondeat superior* applies to Pahl for the negligence of his foreman or servants. Defendants cite Waters v. Pioneer Fuel Co. 52 Minn. 474, 55 N. W. 52, 38 A. S. R. 564, but that case supports plaintiff. And so also does Resnikoff v. Friedman, 124 Minn. 343, 144 N. W. 1095, in so far as applicable to the facts herein. Marion Shoe Co. v. Eppley, 181 Ind. 219, 104 N. E. 65, Ann. Cas. 1916D, 220, also cited by defendants, is so different in facts as to be of no value. Emmerson v. Fay, 94 Va. 60, 26 S. E. 386, may be distinguished in this, that the amount due under the agreement for the work was to be paid in two payments by the party sued, one of $200 before the work was finished and the balance after its completion, and the one who agreed to do the work had the exclusive right to employ the workmen needed and receive a profit on their labor. We recognize that the manner of paying for the work is not decisive. But we are satisfied that whether Megears was an independent contractor or a servant of Pahl's was for the jury's decision and not for the court's. The jury found he was not an independent contractor.

Both defendants insist on judgment notwithstanding the verdict on the ground that the evidence fails to show that the collapse of the scaffold was due to their negligence. This claim is predicated in part on the proposition that "it is well settled in this state and elsewhere that it is not the personal duty of an employer to supervise the construction of scaffolds, or the adjustment of planks upon stagings; his full duty being performed when he furnishes suitable and sufficient material therefor. The matter of construction and arrangement is an incident of the work, and rests upon the servant." Reid v. N. W. Fuel Co. 116 Minn. 96, 98, 133 N. W. 161, and cases therein cited. But that case, and others cited, involved the duty of a master to his servants. This plaintiff had nothing to do with

the construction of the scaffold; he was not on the premises then. He was not a fellow servant of those who did construct it. He could be found to be an invitee upon the scaffold. Furthermore, it is contended that plaintiff did not prove what caused the bracket to give way, and therefore its so doing cannot be attributed to the fault or negligence of either defendant. Laying out of consideration for the present plaintiff's testimony that Pahl admitted that he thought the scaffold was not sufficiently strong, there was nothing to indicate any act or omission of Pahl relating to the erection or use of the scaffold. But there being evidence justifying a finding that Megears was Pahl's servant in charge of the work, and not his independent contractor, we conclude that there was enough in the record from which the jury could draw an inference of negligence on the part of Megears or of those under his supervision. Either the center bracket gave way because it was inadequately fastened to the wall or else because the load upon it became too heavy. Its giving way itself suggests that there was faulty construction or use or both combined. However, the court refused to apply the principle of *res ipsa loquitur*. The court did not err in submitting the question of negligence on this theory of law stated in the first sentence of 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6975, and to which no objection was made:

"Where several persons are engaged in the same work, in which the negligent or unskillful performance of his part by one may cause danger to the others, and in which each must necessarily depend for his safety upon the good faith, skill, and prudence of each of the others in doing his part of the work, it is the duty of each to the others engaged on the work to exercise the care and skill ordinarily employed by prudent men in similar circumstances, and he is liable for any injury occurring to any one of the others by reason of a neglect to use such care and skill."

To the cases cited to support the text we add Builders & M. Mut. Cas. Co. v. Butler Bros. Bldg. Co. 192 Minn. 254, 255 N. W. 851. We think defendants' negligence was for the jury. There was enough in the record to justify a finding that only two spikes were

driven into this bracket, a 60-penny spike near the top of the side next to the wall and a 20-penny spike near the bottom; that it was intended that these spikes should be driven through the sheathing and into the posts behind the sheathing, but that the 60-penny spike at the top of this middle bracket had been so negligently driven that it missed the post. Plaintiff testified that some time after the acci dent Pahl showed him the spike hole in the sheathing and expressed . the thought that the failure to drive the spike into the post caused the disaster. We do not overlook defendants' witness who testified that the hole was made when the bracket was replaced. The veracity of this testimony was for the jury. Megears, the foreman of the work, was charged with the duty of providing a reasonably safe scaffold and seeing to its proper use. Permitting more men to work thereon than it could support might be found negligent supervision. And for his foreman's negligence Pahl is responsible, even to an invitee.

Error is assigned upon this instruction:

"If you find by a fair preponderance of the evidence that the scaffold was negligently erected or operated by or under the supervision of a defendant [Pahl] or his servants, and that plaintiff, Gilbert, was permitted or invited to be upon such scaffold by a defendant or his servants, and that negligence on the part of defendant or his servants was the proximate cause of the injury to said plaintiff," then he is entitled to the damages he has proved he sustained.

In that connection the court charged that the mere fact of the falling of the scaffold did not give rise to an inference of negligent construction or use, and that the burden of proof was on plaintiff to prove, first, that he was invited or permitted by defendants or either of them to be upon the scaffold; second, that the scaffold was negligently constructed or operated by defendants or either of them. There is nothing of which either defendant may rightly complain in the instructions referred to. This was on the theory that the jury found that the men who constructed the scaffold and invited plaintiff to work thereon were the servants of Pahl.

Defendants urge error in this instruction with reference to the special damages of $1,687.75 alleged as having been paid by plaintiff for hired help to do the work which his injury disabled him from doing:

"The mere fact that he may have paid out money for help is not sufficient to justify you in awarding such amounts unless you find that expenditure was necessary to perform duties which he was unable to perform by reason of his injuries and was a reasonable amount."

Accurately speaking, it was the loss of plaintiff's own earnings resulting from his disability, or, in other words, the value of the time lost by him, that should measure his special damages. Cox v. C. G. W. R. Co. 176 Minn. 437, 223 N. W. 675; Stynes v. Boston Elev. Ry. Co. 206 Mass. 75, 91 N. E. 998, 30 L.R.A.(N.S.) 737. But it is clear to us that what he paid hired help for the work he would have done if not injured was less than the value of the loss of his time or the loss of his earnings. The time of an able-bodied farmer operating a sizable farm is generally worth more than the going wages of hired help to do the farmer's work. Hence, if technically erroneous, the instruction must be regarded as not prejudicial to defendants.

In view of the testimony regarding the spike hole in the sheathing and the weakness of the scaffold, the court rightly refused the request to instruct that there were no admissions of liability in the evidence. Nor does the record warrant an instruction in respect to latent defects. Nor was it error to refuse an instruction based on a claim that there was testimony to go to the jury that plaintiff knew as much about the construction of the scaffold as defendant. Nor does the record demand that the cautionary instruction should have been given that a verdict could not be based on mere speculation and conjecture. Nor was there error in the instruction that the burden was upon Pahl to prove that Megears was an independent contractor. Pahl asserted that defense in the trial.

Error is assigned on the ruling allowing the acreage of Pahl's farm to be shown. No questions were asked as to the value of the

farm, or as to acreage under cultivation, or as to its productiveness, or as to its being clear or encumbered. The record shows no effort to impress upon the jury that Pahl was well fixed financially. The ownership of a barn of the construction and size of this barn speaks more persuasively, we think, of Pahl's financial standing than the bare fact that the barn was located on a 290-acre farm.

Megears pleaded as a defense an adjudication of plaintiff's claim in a proceeding brought before the industrial commission, and assigns error on the refusal to receive in evidence a certified copy of the findings of the referee in that proceeding. The only material finding and one which ended the commission's power to proceed further was that plaintiff "was not in the employ of  *  *  *  Megears." Of course that finding was not a bar to this suit nor a determination of any issue therein against plaintiff. The ruling was correct.

We have no doubt that plaintiff's alleged contributory negligence and his assumption of the risk were jury issues and were properly submitted.

The claim of Pahl that the evidence does not show that he requested plaintiff to help shingle the barn, and that there was error in admitting hearsay evidence of such request, we think not well taken. It matters not how word came to plaintiff. He came to the barn, and when he so appeared Megears invited him to come up on the scaffold where Megears was. The jury having found that Megears was Pahl's foreman and servant, his invitation was Pahl's invitation, and it can be of no consequence how or from whom plaintiff received word to be on hand.

The case was tried on the theory that plaintiff went upon this scaffold, erected under the supervision of Megears, the servant and foreman of Pahl, the owner of the structure erected; that in so doing plaintiff was an invitee of defendant Pahl for the latter's benefit; that the defendant Pahl, by his foreman, had negligently constructed or used such scaffold; and that because thereof it fell and proximately resulted in plaintiff's injury. The court carefully and clearly submitted to the jury all issues properly raised and substantiated by evidence. Other errors assigned have been exam-

504

ined but are deemed without merit. There is no need to base the decision on 1 Mason Minn. St. 1927, § 4153. Its applicability was apparently not urged in the court below.

The order is affirmed.

