# MARTHA B. GUILD v. FRED W. MILLER AND OTHERS.[1]

February 5, 1937.

Nos. 31,084, 31,085, 31,111.

[1]Reported in 271 N. W. 332.

*Robb & Rich,* for appellant Fred W. Miller.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for appellants Gust Scharf and John J. Bokinski.

*Frank C. McGivern, Charles E. Carlson,* and *Robert J. McDonald,* for respondent.

JULIUS J. OLSON, JUSTICE.

Defendants separately appeal from a judgment entered pursuant to verdict holding all of them to responsibility for negligently causing the death of plaintiff's intestate, Frank R. Guild.

The accident occurred about seven o'clock in the evening of November 8, 1934, a short distance south and east of the station of Lincoln, Morrison county, upon trunk highway No. 10. Defendant Miller is engaged in commercial trucking of livestock between Verndale and South St. Paul. On the evening in question he was driving a truck heavily loaded with livestock consisting of 31 sheep, 11 calves, 7 hogs, and 2 cattle. At the point mentioned the rear axle of his truck broke. At this place the slope or grade is downward in the direction in which he was traveling. He managed to get his truck onto the shoulder so as to leave ample room for passing traffic. He failed in his efforts to find anyone else to take over the load, and conditions were such that he thought it impractical to unload. He then went to a store and telephoned defendant Scharf's garage, located some distance therefrom, and instructed the one in charge to furnish a new rear axle and to have this done on the highway, Miller being anxious to get on his way to his destination. Scharf did not go to the scene of accident but sent out his mechanic, defendant Bokinski, with the new axle. Bokinski soon found that he was short of the required equipment to bring about the desired change. He accordingly procured from Guild (plaintiff's intestate), who was operating an oil station near at hand, an empty steel barrel, some planks, and other material with which to brace and hold the load above the running gear of the

truck so as to make the change possible. The platform of the truck, including the load thereon, was accordingly lifted by means of jacks. To the right and at the rear end thereof was placed the oil barrel; also, planks were placed thereon sloping forward so as to make that side reasonably safe from dropping down upon the running gear of the truck. On the left side the dual rear wheels were pulled out, the object being similarly to protect the load from tipping in case of a drop. This was the situation when Bokinski got underneath the truck upon the ground and with wrenches sought to remove the bolts, tying the two parts of the rear axle in a metal housing. Miller was on the opposite side of the housing taking out the bolts from that side. These men were thus lying head to head in opposite directions under the truck, both engaged in accomplishing the same purpose. Miller was anxious to get the thing fixed with the least possible delay so as to get the load he was carrying to South St. Paul. It was getting late, and the night was dark. Bokinski was apparently anxious to serve Miller to accomplish this purpose. It was a hurry-up job. The Scharf garage had been called upon theretofore to render service for Miller, he being one of its customers.

Guild was near the end of the truck on the left side holding a lantern. While the work was in progress, either Miller or Bokinski (there is conflict as to which one made the request) asked to have the light placed closer so that the one doing the work and making the request could better see what he was seeking to accomplish. Guild reached over the rear wheels holding the lantern underneath the body of the truck, intending thereby to render the requested assistance. In the position thus taken the upper part of his body was between the dual rear wheels underneath and the suspended truck platform above. While in this position the truck somehow suddenly and unexpectedly moved forward some 18 inches or two feet, thereby causing the loaded box to fall down. Guild was caught between the wheels and the bottom of the truck box, heavily loaded as we have seen, and died almost instantly.

There was no motion for new trial. But each defendant had moved, unsuccessfully, for a directed verdict and after its rendi-

tion moved for judgment notwithstanding. The motions having been denied, judgment was entered, and these appeals followed.

Defendants are in harmony respecting the following contentions: (1) That each was not guilty of any actionable negligence; (2) that he owed no duty to the deceased; (3) that the cause of the death of plaintiff's intestate was not in the chain of proximate cause; (4) that decedent was a volunteer or, at most, a mere licensee, hence that defendants owed him no duty except to refrain from wilfully injuring him; (5) that decedent assumed the risk and, in any event, was guilty of contributory negligence as a matter of law.

■ The scope of review in the situation presented is decidedly limited. The rule is stated in 3 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 5085. "By resting solely upon a motion for judgment a defeated party waives all errors which would be ground only for a new trial." Eichler v. Equity Farms, Inc. 194 Minn. 8, 10, 259 N. W. 545. It is therefore clear that the first question presented is whether the record sustains the verdict. If it does, that disposes of the appeals.

■ Do the facts stated justify a finding of actionable negligence, and, if so, is the record such as to sustain a finding of joint or concurrent negligence so as thereby to make the verdict unassailable? When counsel reach this point in their briefs it is evident that then their coöperative effort to defeat plaintiff's cause ceases. They find no difficulty in placing the burden upon the other fellow, each pointing to such other as the sole cause and each claiming to be free from fault. In Miller's behalf it is contended that when he secured the services of the garageman he thereby obliterated himself from the picture and wholly absolved himself from liability because from then on it was the garageman (acting by and through his mechanic Bokinski) who took the thing in hand. The record, however, does not sustain this contention. Scharf's mechanic was not acting as or for an "independent contractor." Miller throughout the entire transaction participated in the work, gave instructions with regard to having the change of axle made upon the highway, and specifically instructed Bokinski that he did not want to unload, or have un-

loaded, the livestock while the work was in progress. Scharf testified:

Q. "Now, tell us, Mr. Scharf, do you prohibit an owner from assisting your mechanic on the job? * * *

A. "No, we do not, it is pretty hard to prohibit the owner from helping. ‘

Q. "Surely. In other words, if one of the gentlemen on this jury had a truck and it broke down on the road and he called your garage and you came out, and he wanted to assist particularly if he had a load of livestock long distance for St. Paul and anxious to be on his way and it was a dark night, why, under those conditions you would permit him to assist in making repairs, is that right?

A. "Yes, sir."

As has already been noted, Miller was rendering assistance to Bokinski at the moment of Guild's injury. As agencies of causation it is difficult to say as a matter of law that one was blamable and the other not. He was present at all times from the moment of the breaking of the axle to and including the time of Guild's injury. There is evidence that he is the one who directed Guild to hold the light closer so the work then in progress could be facilitated by additional light from the lantern. In counsel's brief (for Scharf and Bokinski) the record is extensively quoted to establish this as a fact beyond dispute and as a basis for their argument that Miller alone should be held to liability. They also urge that Bokinski's authority was limited to the doing of the work and was without authority to hire or engage anyone to help him; that if Bokinski had any authority at all it was necessarily limited to the securing of assistance of a workman as an employe of Scharf; and, that being so, plaintiff's recovery must be had under the provisions of the workmen's compensation act; that common law negligence is not the proper remedy.

In Geiss v. Twin City Taxicab Co. 120 Minn. 368, 371, 139 N. W. 611, 612, 45 L.R.A. (N.S.) 382, the court said:

"We approve the rule that, when the master intrusts the performance of an act to a servant, he is liable for the negligence of one

who, though not a servant of the master, in the presence of his servant and with his consent negligently does the act which was intrusted to the servant."

In that opinion the cases are carefully reviewed. Referring to Althorf v. Wolfe, 22 N. Y. 355, Justice Bunn states (120 Minn. 371) :

"The act of the stranger is substantially the act of the servant; the stranger being considered an instrumentality in the hands of the servant. In many cases the liability is placed upon the ground of the servant's negligence in permitting another to perform his duties in a negligent manner."

The reason why the truck moved forward is not difficult to find. Bearing in mind that this truck was slanting forward because of the grade of the road; that the rear end of the truck box was lifted above the rear wheels to a very considerable height, at least a foot or more; that the truck was heavily loaded with livestock, which would naturally crowd toward the front end with the slope of the platform upon which they had their footing, the conclusion is obvious that this was a situation fraught with real danger. If the blocking of the wheels was inadequate (and so it obviously must have been or the truck would not have moved forward), then, it seems to us, that failure alone was sufficient to make a jury issue of the question of negligence. And whether defendants acted jointly and in furtherance of a common purpose was also one of fact; and so, too, was the question of whether they, acting jointly or severally, failed to exercise the degree of care commensurate with the danger they themselves had created. For their own protection while making the repair, as well as for the safety of the load then carried, reasonable prudence required the taking of more adequate precautions against what actually happened than the makeshift efforts here employed. At least the jury could so find, and that is enough for our purpose.

We think the evidence justifies the conclusion that both Miller and Bokinski "were guilty of negligence 'concurring with one or more efficient other causes' to injure plaintiff. Where two such causes 'combine to produce injuries,' the author of neither can

escape liability 'because he is responsible for only one of them.'"
Brown v. Murphy T. & S. Co. 190 Minn. 81, 85, 251 N. W. 5, 7. On
the subject of concurrent negligence and concurring causes, see
also 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) §§ 7006-7007.

■ The question of whether plaintiff's intestate was an invitee
was also one of fact. We think it clear he was not a trespasser.
As an invitee defendants owed him the duty of exercising ordinary
care. 45 C. J. pp. 823, 825, § 235; Gilbert v. Megears, 192 Minn.
495, 257 N. W. 73. And see also Mitton v. Cargill Elev. Co. 124
Minn. 65, 144 N. W. 434 (second appeal 129 Minn. 449, 152 N. W.
753); Hunter v. C. St. P. M. & O. Ry. Co. 180 Minn. 305, 230 N. W.
793, 231 N. W. 920.

■ The question of proximate cause is, as stated in Brown v.
Murphy T. & S. Co. 190 Minn. 81, 86, 251 N. W. 5, 7, "mystifying
and futile" in most cases. We think there is enough evidence in
the case to sustain the conclusion reached by the triers of fact
that both Miller and Bokinski were negligent, not only in creating
the dangerous situation causing the harm, but also in the matter
of permitting or inviting Guild to render the assistance that he
obviously was attempting to render at the time of the fatal acci-
dent. 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) §§ 7002,
7003.

■ We think, too, that the questions of assumption of risk and
contributory negligence were for the jury. We cannot assume as
a matter of law that Guild assumed the risk here involved nor that
he was contributorily negligent. Bearing in mind that this was a
hurry-up job and that everyone concerned was interested in render-
ing aid to defendant Miller so that he might proceed on his trip;
that darkness prevailed, making the repair job one of immediate
necessity, it seems far-fetched to say that plaintiff's intestate was
contributorily negligent so as to preclude recovery on the part of
his widow. Guild, of course, knew that both Miller and Bokinski
were underneath the truck, and as such can we say as a matter of
law that leaning over the rear wheels and holding the lantern as
he did to aid them indicates conclusively that he assumed a risk

greater than that in which these men were at that time, or that he was contributorily negligent as a matter of law in so doing? We think not.

The judgment is affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

