JOHANNA KULLA v. E. B. CRABTREE COMPANY.[1]

June 10, 1938.

No. 31,690.

[1]Reported in 280 N. W. 16.

*Elmer R. Peterson, Joseph R. Gunderson,* and *Snyder, Gale & Richards,* for appellant.

*Gallagher & Madden,* for respondent.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from an order denying its alternative motion for judgment or new trial.

Two negligence actions were brought and jointly tried to recover damages arising out of a collision between an automobile owned and operated by plaintiff's husband and a truck owned and operated by defendant. The husband was killed in the accident so that action was brought by his administrator; the other was by the wife, a passenger occupying the front seat with him. The accident occurred at about half past one o'clock in the afternoon of February 11, 1937, upon a highway in rural Freeborn county known as "Wells-Alden short cut." The day was clear and sunny, the country open and fairly level, and the highway straight, about 18 feet wide, and graveled. There was upon it in spots some ice and snow, also puddles of water. The shoulders were soft and in places packed with snow. The traveled portion of the road as then used was in the middle.

The jury returned a verdict for defendant in the husband's case but found for the wife. The amount of the verdict is not questioned nor is there any claim of error at the trial. The sole question is whether there is evidence sufficient to justify a jury in finding negligence on the part of defendant's driver bringing it as such into causal connection with plaintiff's hurt.

A recital of the facts in the light most favorable to plaintiff will now be attempted. When these vehicles were approximately three-quarters of a mile apart each driver saw the other approaching. The husband was driving at about 30 miles an hour, then slowed down to 25 miles, and still later to 20 miles. Defendant's truck was approaching in the opposite direction going at a rate of speed estimated at 40 to 50 miles per hour. As they were thus approaching each other there was a bridge between them some 14 feet in length

and a trifle less than 18 feet in width over a deep ditch. (The photographs show a lot of snow in this depression.) Defendant's driver continued on his way in the middle of the road with undiminished speed. The impact took place immediately to the west of the bridge from which direction the husband's car was coming. When the truck had almost reached the easterly end of the bridge it was still occupying the central portion of the highway. When the vehicles came to rest after the impact the truck occupied a "kitty corner" position "a couple of feet at least over the center of the bridge." It was "a couple of feet over the center line * * * it might have been more. * * * I am sure it wasn't any less." Another witness testified:

"The truck was decidedly at an angle with the front end to the northwest. It was at a decided angle in reference to the road, to the northwest. I would say the back end of the truck was possibly two feet over the center of the road, and the front end of the truck was possibly two feet from the north edge of the road."

There were skid marks to the east of the bridge extending some 40 to 50 feet, indicating that the truck driver had suddenly awakened to impending danger as the two vehicles were approaching the bridge at or about the same moment. He testified:

"Well, as I got across the bridge, I stepped on the brake and I pulled my wheel so I would go to the right. I don't know how much I swung, or how—the impact was there, * * *"

So the situation was obviously a critical one. To plaintiff's husband the situation confronting him must have appeared extremely dangerous. If he were to drive to his right he would be heading for the deep ditch facing him with every probability of immediate disaster. Instead of so doing he evidently chose the other course, that of abruptly turning his car to the left. At any rate, the two vehicles came together head on with the result already mentioned.

The court amongst other things instructed the jury as follows:

"The first question in these cases is this: Kulla [plaintiff's husband] was on the wrong side of the road, as I have stated to you

when the crash came. Unless negligent driving on the part of Daoust [truck driver] created an emergency, there is no basis for these lawsuits. Clearly, Kulla had no right to be there. Now, if you find no fault—no negligence, I mean, in Mr. Daoust's driving causing or contributing to the collision, that would end your duties and plaintiff's actions would fail. If Daoust has not been proven guilty of negligence, you will return verdicts for the defendant in each of these cases. * * *

"It is the claim here that Mr. Daoust drove at a high, negligent, and dangerous rate of speed, as he approached the bridge occupying the center of the traveled part of the highway; that his speed was negligent; that it was unreasonable, and dangerous, and created an emergency situation as the two vehicles approached the bridge. * * *

"There are two sides to this matter. The defendant claims that Kulla put this driver Daoust in an emergency. Plaintiff claims that the defendant's driver was the one who created an emergency.

"Detailing a little more for your understanding—if an emergency was created—I have to take this case piece by piece—on the part of Daoust, without negligence on the part of Kulla, in consequence of which he, Kulla, acting as a reasonably prudent man under the circumstances, turned his car to the north side of the road to avoid a collision with the truck, then the fact that the collision may have happened upon the north side of the highway would not necessarily constitute a violation of the statute requiring him to travel on his right side of the road, and to pass on the right of vehicles approaching him. * * *

"If Daoust created an emergency, and if you find that because thereof, Paul Kulla went to the north side of the highway, and if you find that Paul Kulla acted under the facts as they presented themselves to him, as a person of reasonable prudence would have acted under the same circumstances, then his being on the wrong side of the road would be lawful. The contrary, if he did not act within those rules, then he would be negligent, and would be himself the causal agent in bringing the cars into collision."

And further, as to the wife's case:

"* * * if the evidence in your opinion does not show that Daoust was guilty of causal negligence, and by that I mean negligence which caused the wreck, that then her action fails, because she must prove before she can recover from the Crabtree Company that its driver was negligent. * * * Her action fails completely if the driver of defendant's truck was not negligent, and if the sole negligence in this case was the negligence of Kulla, himself. In order for her to prevail she must establish, and she has the burden of proof of establishing as an affirmative proposition that Daoust was negligent in the driving of the truck resulting in the cars coming into collision, either solely by his negligence, or through the negligence of both drivers."

The issue at the trial and here is necessarily a narrow one, i. e., which driver was the cause of the wreck, or were both drivers negligent, thereby contributing to the cause which led to this disaster? Mr. Kulla was killed in the accident so there remained only the truck driver and Mrs. Kulla as eyewitnesses. Their testimony is in conflict. We have recited the facts in the light of her contentions, the verdict being for her.

In the husband's case defendant counterclaimed for damages to its truck, claiming that Mr. Kulla was the sole cause of the accident. As we have already noted, the jury found for defendant generally but made no award on the counterclaim; so it therefore seems clear they considered both drivers negligent; i. e., the acts of each contributed as a cause to the wreck. We come then to the crucial question: Does the evidence justify the verdict? The answer depends upon whether the driver of the truck was a potent contributing factor in causing the collision.

■ The question as to what constitutes the proximate cause of an injury is usually one for the jury; and, unless the evidence is conclusive, is to be determined by them "in the exercise of practical common sense, rather than by the application of abstract definitions." 4 Dunnell, Minn. Dig. (2 ed. & Supps.) § 7011, and cases cited under note 33.

The record, so it seems to us, leaves the chain of causation fairly clear. The truck driver set in motion circumstances that presented grave danger to Mr. Kulla. The truck was a three-ton affair, half loaded. Its position immediately after the impact indicates that although its front end was not on the wrong side of the road at the time of the impact it had been there but a moment before.

■ It is well established that where an injury is caused by the concurrent negligence of several persons, the negligence of each is deemed a proximate cause of the injury and each is liable for all the resultant damages. Findley v. Brittenham, 199 Minn. 197, 271 N. W. 449. Likewise, "where two negligent causes combine to produce injuries, neither author can escape liability because he is responsible for only one of them." Guild v. Miller, 199 Minn. 141, 271 N. W. 332; Dunnell, Minn. Dig. Supp. 1937, § 7006, and cases cited.

■ We had occasion very recently in Shuster v. Vecchi, 203 Minn. 76, 79, 279 N. W. 841, to consider questions almost identical to those here presented. What was there said seems equally applicable here. In this as in the cited case, "the jury could find that defendant's negligence was a 'substantial factor in bringing about' the happening of this accident and, as a consequence, plaintiff's hurt."

Inasmuch as the only error assigned as a basis for new trial is founded upon the claim "that the verdict is contrary to law and is not justified by the evidence," we can see no need for further discussion of the facts or applicable legal principles.

The order is affirmed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.