OLIVER BAKKEN v. CECIL LEWIS AND OTHERS.
FRANK REHSE AND OTHERS, APPELLANTS.[1]

March 14, 1947.

Nos. 34,289, 34,290.

[1]Reported in 26 N. W. (2d) 478.

*G. P. Mahoney, John S. Morrison,* and *Edman & Edman,* for appellants Cecil and Duane Lewis.

*Freeman & King, C. A. Johnson,* and *E. John Abdo,* for appellant Frank Rehse.

*Leo J. Seifert,* for respondent Oliver Bakken.

*Moonan & Moonan,* for respondents Louis and Wayne Lutz.

MAGNEY, JUSTICE.

A verdict for $30,000 was rendered for plaintiff against defendants Frank Rehse, Cecil Lewis, and Duane Lewis. Rehse and the Lewises separately appeal from orders denying their alternative motions for judgment or a new trial.

Rehse was the owner of a 1936 Dodge coach. On the evening of November 4, 1944, between eight and nine o'clock he was driving north on a graveled country road leading from the village of Granada. A two-wheeled trailer equipped with a box was attached to his car. About half a mile from Granada the car stalled. It was stopped on the right-hand side of the road near the grass line. The

graveled portion of the road was 26 feet wide, with grass shoulders one to one and a half feet in width. Beyond that was a three-foot ditch. When Rehse found he could not get his car started he walked back to Granada. Plaintiff operated an automobile repairshop in the village, and Rehse persuaded him to go out to the stalled car to start it. Plaintiff took a customer's car which was in good running order and went out. He drove in front of the Rehse car and attached a tow chain to it. Plaintiff pulled ahead, and Rehse sat back of the wheel in his own car and steered it, with the ignition on and the car in gear. They moved ahead some distance, but the Rehse car would not start. After the cars had stopped, Rehse got into the front car and plaintiff into the Rehse car. Rehse then moved ahead about a block, but the engine of the stalled car still refused to start. Rehse stopped the cars on the right-hand side of the road with the right wheels on the grass, as he claims. Headlights were lighted on both cars, but those on the rear car were dimmed. When the cars had been stopped, Rehse remained in the first car, and plaintiff walked toward the front of the Rehse car. He looked both ways, saw that no cars were coming, and then raised the hood, which opened from the side. He leaned over the fender, close up against it, with his left leg halfway up the fender and his right one on the ground. With his head underneath the hood and a flashlight in his left hand, he started to check the wires. While in that position and in less than a minute, he was struck by a 1939 Chevrolet coupé owned by defendant Cecil Lewis and operated by defendant Duane Lewis, a 19-year-old son of the former, and seriously injured. He did not see the Lewis car.

The highway from Granada to the scene of the accident is level, and it continues so northerly for another 800 to 1,000 feet or more, at which point there is a rise. Duane was on his way home, driving northerly on the right-hand side of the road. His car had good brakes and good headlights. He said he was traveling at 25 to 30 miles an hour, but Rehse testified that he saw him approaching and that he was going 60 miles an hour. When about 60 feet from the trailer, Duane saw something dark ahead. It is undisputed that the trailer had neither light nor reflector on it. Duane said he could

not stop before he got to the trailer, so he swung to the left toward the center of the road to go around it and put on his brakes. He skidded with all four wheels 44 feet and passed the trailer on its left. After he had passed the trailer, he swung sharply to the right, and, still skidding for an additional six feet, struck the Rehse car on its side near the front. The impact, which crushed plaintiff's leg and otherwise seriously injured him, pushed the Rehse car about four feet to the east. Duane did not see the rear light or headlight of the Rehse car, or, for that matter, the car itself, until he struck it. Nor did he see the lead car. When he turned to the right he thought he had passed the dark object which he had seen on the road.

At this same time, defendant Wayne Lutz, operating his father's (Louis Lutz's) 1940 Buick, was approaching from the north. Duane claims that the undimmed lights from the Lutz car blinded him and contributed to cause the accident.

At the close of the testimony the court directed a verdict in favor of defendants Lutz, and the jury brought in a general verdict against the other defendants for $30,000.

We shall first consider the claims which Rehse raises on his appeal. He contends, first, that the evidence shows that plaintiff was an independent contractor and fails to show any negligence on his part which proximately caused or contributed to cause the accident; and, second, that the evidence shows contributory negligence on the part of plaintiff as a matter of law.

■ The claim is made by plaintiff that Rehse parked his trailer on the highway without lights. The trailer was not equipped with a rear light or reflector. Causing and permitting an unlighted trailer to be on the highway in the nighttime constitutes a violation of a statute of this state. The trailer belonged to Rehse. He personally had it pulled onto the highway and also parked it when his automobile first stalled. He also personally parked it a few moments before the accident happened. Plaintiff had nothing to do with the presence of the trailer on the highway and was not responsible for its lack of lighting equipment or its unlighted condition. In Scheppmann v. Swennes, 172 Minn. 493, 215 N. W. 861, the facts are similar to those

of the instant case. Plaintiff in that case was present at the request of the owner of an unlighted car to assist in removing it. This court said (172 Minn. 496, 215 N. W. 862) :

"* * * The disabled car was not plaintiff's, and he was not responsible for its unlit condition. He was there at the request of the owner of the car to assist in removing it."

And further (172 Minn. 495, 215 N. W. 862) :

"* * * Before plaintiff came to the disabled car he of course was not chargeable with its condition."

Rehse contends that in the situation here plaintiff was an independent contractor. He first raised this point in his motion for a directed verdict at the close of the testimony. As stated, plaintiff operated an automobile repairshop. He was asked to start Rehse's stalled car. He was not asked to take possession of the car and tow it in. Rehse was present all the time. He and plaintiff worked together to get it started, taking turns in towing the disabled car. Rehse did not surrender the entire control of the car to plaintiff. All he asked plaintiff to do was to get the stalled car started. Both plaintiff and Rehse agree that where the owner of an automobile turns it over for repair to a person not in his general employ and surrenders entire control to the repairman the owner is not liable for injury inflicted by the car while it is being operated by the latter, who is deemed to be an independent contractor. In the instant case, Rehse did not surrender entire control of the car to plaintiff, the mechanic. On the facts here, plaintiff was not an independent contractor so as to insulate Rehse from all liability for the lack of lighting equipment on the trailer.

In Guild v. Miller, 199 Minn. 141, 271 N. W. 332, the rear axle of a truck loaded with livestock broke, and the owner called a mechanic to install a new one. He was anxious to be on his way, as was Rehse here. Both the owner and the mechanic worked together putting in the axle. Both were engaged in accomplishing the same purpose. The owner contended that the mechanic was an independent contractor and solely liable for the death of plaintiff's intestate, who,

while holding a lantern to assist them in the repair operations, was killed when the truck moved forward. The court said that the record did not sustain such a contention; that Miller, the owner, was rendering assistance to the mechanic at the time; and that he was present at all times, from the moment the axle broke to and including the time of the accident. So here.

It is obvious that Rehse was the law violator and therefore the negligent wrongdoer. The responsibility for the unlighted trailer was on him. If his negligence proximately caused or contributed to cause the accident he is liable. The jury found him negligent and his negligence a proximate cause of the accident. The evidence supports both findings. The claim of contributory negligence on the part of the plaintiff will be considered later.

■ Next we shall consider the contentions of defendants Lewis. They claim that the accident was caused by reason of the negligence of defendants Rehse and Wayne Lutz and the contributory negligence of plaintiff. They disclaim all negligence on the part of Duane Lewis. They also claim that the verdict was so irregular that it must be held void.

Duane approached the trailer and the two cars from the rear. He claims that he was traveling 25 to 30 miles an hour. Rehse testified that he saw him approach, and he estimated his speed at 60 miles an hour. Duane did not see the trailer until he came within 60 feet of it. He immediately put on his brakes and turned toward the center of the road. His car skidded on all four wheels for a distance of 44 feet, then turned sharply to the right and skidded an additional six feet, when it struck the Rehse car and pushed it to the east about four feet. On such evidence we are of the opinion that the question whether Duane operated his car at a negligent rate of speed was for the jury.

■ Defendants Lewis claim that defendant Wayne Lutz, who was driving south and approaching the scene of the accident, failed to dim his lights as required by statute, and that Duane Lewis was blinded by the bright lights of the Lutz car. They claim that the negligence of Wayne in failing to dim his lights was a contributing

factor in causing this accident and that the trial court erred in directing a verdict in favor of defendants Lutz. Duane Lewis was the only witness who testified that Wayne Lutz failed in his statutory duty to dim his lights, and his testimony on this feature of the case was so unsatisfactory and contradictory and so thoroughly discredited that it would not support a verdict against the defendants Lutz if one were given. Accordingly, the court was fully justified in directing a verdict for the Lutzes. It would serve no useful purpose to recite in detail the evidence on this feature.

■ All the appealing defendants argue that plaintiff is guilty of contributory negligence as a matter of law. We have already stated that the failure to have the trailer equipped with lights or a reflector was not chargeable to plaintiff, but to Rehse. The cars and the trailer were parked where they were at the time of the accident by Rehse and not by plaintiff, and if the evidence should warrant a finding that the unobstructed space between the cars and the opposite side of the traveled portion of the roadway was less than that required by statute, such lack of space must be charged to Rehse and not to plaintiff. The cars were parked at the grass line. Plaintiff lifted up the hood of Rehse's car. He looked both ways before he did so and then proceeded to check the wires to discover, if possible, the cause of the failure of the Rehse car to operate. It would take just a few moments to do so. Before he had finished his inspection he was struck and injured. It is claimed that he should have driven the cars into some farmer's driveway before he proceeded to check the wires. Whether he was guilty of contributory negligence in this respect or in any other respects was a question for the jury. Contributory negligence depends on the facts of each case. We are of the opinion that the jury was justified in finding that plaintiff was not guilty of contributory negligence.

■ Defendants Lewis complain of the court's refusal to instruct the jury as to the emergency rule. As the recited facts show, Duane Lewis safely passed the trailer on its left. He put on his brakes as soon as he saw it. Because of his speed, his car skidded on all four wheels for a distance of 50 feet before he struck plaintiff and

the Rehse car, which he admits he did not see. It has already been shown that the evidence fails to support the claimed negligence of defendant Wayne Lutz. Duane did choose the best and safest way in his attempt to escape and would undoubtedly have succeeded except for the speed at which he was traveling. If he had been going more slowly he would have avoided the accident. He was operating a skidding car because of his speed. We are of the opinion that the emergency rule is not applicable here.

■ The jury returned a general verdict for $30,000 against defendant Rehse and defendants Lewis. Accompanying the verdict was a writing as follows:

"The jury find for the plaintiff, and against the defendant, Frank Rehse, in the sum of $7,500.00.

"Against the defendants, Cecil Lewis and Duane Lewis, in the sum of $22,500.00.

"M. J. Helvig."

The court accepted the general verdict and disregarded the accompanying writing. Defendants Lewis contend that the verdict was so irregular as to render it void and that it therefore should be set aside.

The jury, of course, had no jurisdiction to apportion the amount of the verdict among the defendants, as it attempted to do. The general verdict was in proper form, and no complaint is here made as to its amount. In Robyn v. White, 153 Minn. 76, 78, 189 N. W. 577, the jury brought in a verdict of $2,300 against two defendants. Appended to it was the following:

"We, the jurors recommend that the sum of twenty-three hundred ($2,300.00) dollars claimed to be recovered by this suit be donated to the American Red Cross." (Signed by each juror.)

This court held that the recommendation by the jury did not vitiate the verdict. The court said (153 Minn. 79, 189 N. W. 578):

"* * * It would have been good practice to direct the jury to again retire and return a verdict unburdened with any such recommendation, but we cannot hold that this recommendation annuls the

verdict. * * * Perhaps the recommendation aided in bringing about unanimity. It would seem that no juror could have been so ignorant of court proceedings as to believe that such recommendation could be enforced. But, however that may be, we think the better rule is that when there is a verdict clear and sufficient in all respects, such foreign and irrelevant matter may be rejected as harmless surplusage. It is much the same in principle as a recommendation of clemency. This has never been held to vitiate a verdict."

In Warren v. Westrup, 44 Minn. 237, 46 N. W. 347, 20 A. S. R. 578, an assault and battery case, the irregularity of a verdict was involved. The jury brought in the following verdict:

"We the jury in the above entitled action find for the plaintiff and against defendants Joseph Westrup $550 and Conrad Fink $150, and assess the plaintiff's damages at the sum of total $700."

Plaintiff thereupon dismissed the action as to defendant Fink. The trial court, on motion of defendant Westrup, set the verdict aside and granted a new trial. This court reversed and reinstated the verdict against Westrup.

In Atherton v. Crandlemire, 140 Me. 28, 33 A. (2d) 303, where the jury brought in a verdict of $800, and the verdict carried with it a statement of $400 each immediately following the assessment of damages, the court said (140 Me. 32, 33 A. [2d] 305):

"The jury undoubtedly undertook to apportion among the defendants what part of the verdict each of them, as between themselves, should pay. This amounted only to a recommendation. If it was intended as anything else, it is merely surplusage, and is to be rejected as irregular and void. The general verdict must stand."

In Lake Erie and Western R. Co. v. Halleck, 78 Ind. App. 495, 499, 136 N. E. 39, 40, the verdict read:

"We, the jury, find for the plaintiff against both of the defendants, and assess her damages at $800, Lake Erie and Western R. Co. $700, John Jordan $100."

The court held that the part apportioning the amount of the verdict was surplusage and did not vitiate the general verdict.

In Pennsylvania R. Co. v. Logansport L. & T. Co. (7 Cir.) 29 F. (2d) 1, 3, where the jury made an apportionment, the court said:

"* * * This apportionment was unwarranted and may be treated as surplusage."

To the same effect, see Emblem Oil Co. v. Taylor, 118 Pa. Super. 259, 179 A. 773; George B. Scrambling Co. v. Tennant Drug Co. 25 Ohio App. 197, 158 N. E. 282; Hall v. McClure, 112 Kan. 752, 212 P. 875, 30 A. L. R. 782; Dextone Co. v. Building Trades Council (2 Cir.) 60 F. (2d) 47.

We repeat what we said in Robyn v. White, 153 Minn. 79, 189 N. W. 578, *supra:*

"* * * It would have been good practice to direct the jury to again retire and return a verdict unburdened with any such recommendation, * * *."

See, also, Begin v. Liederbach Bus Co. Inc. 167 Minn. 84, 208 N. W. 546.

In 52 Am. Jur., Torts, § 124, it is said:

"* * * In a number of jurisdictions, where the verdict fixes the amount of the plaintiff's recovery at a certain sum, but attempts in addition to apportion the liability therefor among the several defendants by directing the amount each shall pay, the plan is adopted of returning the verdict to the jury for correction in accordance with instructions that they can find one sum only, and that jointly against all the defendants found liable. Indeed, the apportionment in the verdict has been regarded an essential part thereof, which cannot be taken as surplusage, so that a judgment may not be rendered thereon against the defendants jointly. The numerical weight of authority, however, is to the contrary, and the trial court is held entitled to treat all the matter after the finding of joint liability as surplusage."

We are of the opinion that the attempted apportionment by the

jury was mere surplusage and did not vitiate the general verdict.

Orders affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.

